Argued July 24, decided August 6, 1912.

## KERR *v.* DUVALL.

[125 Pac. 830.]

DEEDS—CONSTRUCTION.

1. In the absence of a mistake on the part of the grantor, the utterance of a deed conveying real property is to be strictly construed against him.

WILLS—CONSTRUCTION.

2. In interpreting the language of a will, liberal construction is to be applied, in order to determine the testator's intention respecting the disposition of his property so as not to defeat the purpose of his bounty.

WILLS—CONSTRUCTION—INTENTION—EVIDENCE.

3. In order to determine testator's intention in the construction of a will, parol evidence is admissible to explain the situation and condition of testator's property as understood by him when he attempted to dispose of it.

BOUNDARIES—"FOOT OF HILL."

4. In determining the boundary of land calling for a line by and along the foot of a hill, the "foot of the hill" would be construed to mean the beginning of an abrupt rise, and not to include the bottom land, though sloping gradually upward from a stream.

APPEAL AND ERROR—AFFIRMANCE—EVIDENCE.

5. Where a boundary line established by the court, though not predicated on any evidence appearing in the record, was nearly identical with an attempted compromise line of which the parties had notice and under the evidence was not prejudicial to plaintiffs, defendants not having prosecuted a cross-appeal, the decree would be affirmed.

From Yamhill: WILLIAM GALLOWAY, Judge.

This is a suit by Edward J. Kerr, Samuel J. Kerr, and William L. Kerr, against Edward F. Duvall (unmarried), J. B. Hosford and Minnie A. Hosford, his wife, Elbridge

Duvall and Nettie Duvall, his wife, Lucia Ranzenbach and Karl Ranzenbach, her husband, C. E. Duvall (unmarried), L. J. Cain and Elbridge G. Duvall, Jr., as trustee for said Elbridge F. Duvall and Lester Potter, to determine a disputed boundary line. From an adverse decree, plaintiffs appeal.          AFFIRMED.

For appellants there was a brief over the names of *Messrs. McCain, Vinton & Galloway,* and *Mr. Frank W. Fenton,* with oral arguments by *Mr. W. T. Vinton* and *Mr. Francis V. Galloway.*

For respondents there was a brief and an oral argument by *Mr. J. B. Hosford.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is an appeal by the plaintiffs from a decree establishing a disputed boundary. The evidence shows that Elbridge G. Duvall, a resident of Dayton, N. J., was on April 30, 1888, the owner in fee of the donation land claim of Edward T. Warren and wife in Yamhill County, Oregon, and on that day Duvall made a testamentary disposition, subsequent to the execution of his last will, whereby after his death the defendants secured a title to land in that claim, a part of which is described in the codicil as follows:

"Commencing at a point on the southerly line of my farm at its intersection with Deer creek, thence northerly along the westerly side of said Deer creek until it intersects with Beaver creek; thence westerly along the southerly side of said Beaver creek to the foot of the hill; thence in a southerly direction by and along the foot of said hill to the southerly line or boundary of my said farm; and thence easterly by and along said southern boundary to the said Deer creek to the point or place of beginning, containing about twenty-one acres of land."

The western limit of the premises thus described forms a part of the eastern border of land, in that claim, which

the plaintiffs purchased pursuant to terms of Duvall's last will and testament.

The plaintiffs having secured a survey of what they assert to be the boundaries of the real property thus described in the codicil, by causing the south and ·west banks of such streams to be meandered and a line to be run northwesterly from a point in the south boundary of the Warren donation claim to a point on the south margin of Beaver Creek, so as to include within the area 20.50 acres, allege in the complaint that the line so extended is the correct boundary between a part of their lands and a portion of the defendants' premises. The defendants obtained a survey of what they maintain is the western border . of · the real property described in the codicil, thereby placing the line further to the west and including a larger area of land than is embraced in the plaintiffs' measurement, and in the answer aver that the line so run constitutes the correct boundary. The decree did not adopt either of such lines, but placed the boundary between them, particularly describing the westerly limit, and including in the tract as devised by the codicil 33.57 acres.

It is maintained by plaintiffs' counsel that, Beaver creek and Deer creek having been referred to as forming the northerly and easterly boundaries of the land, the westerly border should have been located along the foot of the hill in such a manner as to include the area specified in the codicil, and, this being so, an error was committed in not adopting the line described in the complaint as the proper limit. It is insisted by defendants' counsel that the language of the codicil properly received a liberal construction so as to effectuate the testator's purpose respecting the real property described, and that the testimony shows it was his intention to devise all the land within the area as found by the court.

1. The rule prevails that, in the absence of a mistake on the part of a grantor, the utterance of a deed conveying real property is to be strictly construed against him.

2. In the interpretation of the language of a last will, however, a liberal construction is applied, in order to determine the testator's intention respecting a disposition of property so as not to defeat the purpose of his bounty. The reason for this distinction in expounding the writings employed in the cases referred to is doubtless to be found in the fact that in executing a deed the grantor usually takes sufficient time and carefully selects the language used to express his purpose. The execution of a will, however, is sometimes postponed until death seems imminent, when it is often impossible for a scrivener to exercise that degree of care in the preparation of a last testament which its importance demands, and, in order to carry out the testator's intention respecting the disposition of his property upon his death and the persons contemplated as his beneficiaries, a liberal construction of his last will is essential.

3. In order to determine such intention, testimony is admissible to explain the situation and condition of the testator's property as understood by him when he attempted to make a disposition thereof. If the codicil had designated a particular point on the south bank of Beaver creek from which a right line extending southerly should intersect the south boundary of the donation land claim at a point so as to include within the boundaries 21 acres and no more, the plaintiffs' contention as to the location of the westerly limit would probably be controlling. It will be remembered, however, that the area of the premises, as given in that instrument, is "about twenty-one acres of land." The evidence shows that south of Beaver creek and west of Deer creek extends a hill from which falling rain divergingly flows into both

streams, so that, if the language "by and along the foot of said hill" is to be strictly construed, no real property would be transferred, since the quoted excerpt from the codicil would mean only the lines forming the southerly and westerly banks of those creeks.

C. E. Duvall, one of the defendants, testified that in the spring of 1888, his father, Edward F. Duvall, at the request of the testator, employed H. S. Maloney to make a survey of the line, the location of which is involved herein, and that when the measurement was completed the field notes thereof were mailed to Elbridge G. Duvall who, pursuant to the information thus obtained, executed the codicil containing the description hereinbefore given.

H. S. Maloney testified that in the year 1888 he was engaged to survey the line last referred to, but whether the measurement was made for the purpose of preparing a will or after it was executed he could not state; that all he remembered was that Edward F. Duvall informed him the testator had given or was to give land on the west side of Deer creek and south of Beaver creek; that the witness delivered the field notes of the survey which he made to the person employing him; and that the line which he run was nearly coincident with the description of the disputed boundary as given in the answer herein. He also testified that in January, 1908, at the request of Warren & Stater, real estate agents who, as he understood, represented the estate of the testator, he again run a line for the westerly boundary and made a plat of the survey which, with the field notes thereof, was duly recorded. A copy of such record was received in evidence showing the westerly line nearly as established by the decree herein.

M. W. Potter, a witness for plaintiffs, testified that he assisted Maloney in making the survey last mentioned; that he was employed for that purpose by Warren & Stater, who as real estate agents were selling the land

to plaintiffs and desired to establish the disputed boundary, telling the witness that when such line was definitely fixed a deed could be executed to the purchasers, describing the premises to be conveyed by metes and bounds.

The survey thus referred to was evidently made and the plat and field notes thereof were filed for record before the deed was executed to plaintiffs who knew a controversy existed, respecting the western boundary, prior to accepting the conveyance. They did not acquiesce in Maloney's survey, but their knowledge of the controversy respecting the boundary before securing their deed deprives them of much of the relief usually awarded to purchasers without notice.

4. It appears that from Beaver creek and from Deer creek the hill referred to rises very gradually for some distance and then the ascent becomes quite steep. In referring to this acclivity, J. G. Hefty, a surveyor who at defendants' request run a line for the westerly border as described in the codicil, appearing as their witness, was asked on cross-examination:

"As a matter of fact, the hill proper begins where the land begins to slope up?"

He replied:

"No, sir; it does not. All valleys have a slope, and all bottom lands have a slope; but we don't call them hills. The foot of a hill is defined as the beginning of an abrupt rise."

The definition thus given is adopted as applicable to the disputed boundary herein, particularly so when construing the language of a will which locates a line by and along the foot of a hill. The testimony shows that the testator had never seen the Warren donation land claim, and his knowledge of the particular tracts thereof must have been obtained from information furnished by persons who understood the condition of the premises. From

a description of the land, as hereinbefore quoted, it is manifest that the information thus supplied, as stated by C. E. Duvall and upon which his grandfather evidently relied in preparing the codicil, was quite accurate as is disclosed by the testimony, which tends to show that the line referred to in the answer is as nearly correct as possible. The boundary so asserted by the defendants to be accurate seems to coincide in most particulars with the measurement made by Maloney in 1888. His survey of January, 1908, seems to have been an attempt to adjust the disputed boundary.

5. The line established by the court, however, is not predicated on any evidence appearing in the transcript; but as the boundary thus determined is so nearly identical with Maloney's attempted compromise line, of which the parties had notice, and as the defendants have not taken a cross-appeal, the decree should be affirmed, and it is so ordered.                              AFFIRMED.