---

Motion to dismiss denied September 9, 1913.
Argued March 31, affirmed April 21, 1914.

## COLUMBIA CITY LAND CO. *v.* RUHL.

(134 Pac. 1035; 141 Pac. 208.)

**Appeal and Error—Decisions Reviewable—Final Decree—Determination of Controversy.**

1. A decree ascertaining the boundary between contiguous lands by course and distance from a given point, and appointing commissioners to mark the line thus ascertained upon the ground, is a final order, from which an appeal may be taken under Section 548, L. O. L., allowing appeals from judgments or decrees or orders which, in effect, determine the action, since the commissioners have only a ministerial duty to perform.

**Appeal and Error—Time for Appeal—Statutory Provisions.**

2. Under Laws of 1913, page 617, reducing the time within which an appeal might be taken from 6 months to 60 days, but providing that where the right to appeal existed at the time the act went into effect (June 3, 1913), the time for taking such appeal should be extended for 60 days thereafter, a right of appeal which would expire on June 18th was extended by the provisions of the act, even though

on June 2d the appellant had filed a notice of appeal, which he failed to perfect by filing his bond in the time required.

**Appeal and Error—Effect of Appeal—Subsequent Appeals.**

3. Where a party to a judgment or decree has perfected an appeal, under Section 550, L. O. L., providing that after the time allowed the respondent to except to the sureties on the appeal bond the appeal shall be deemed perfected, the right of appeal is exhausted, and the party cannot thereafter take another appeal in the same cause.

**Appeal and Error—Effect of Appeal—Irregular Proceedings.**

4. Where a party attempts to appeal, but because of some irregularity the appeal is not perfected, that endeavor to have the judgment or decree reviewed may be abandoned, and the right of appeal will remain.

ON THE MERITS.

**Deeds—Construction and Operation—Construction as a Whole.**

5. The entire description in a deed should be considered in determining the identity of the land, and every part ought, if possible, to take effect and be operative.

[As to the construction of deeds, see notes in 22 Am. St. Rep. 84; 30 Am. St. Rep. 453. As to construction of repugnant clauses in a deed, see note in 111 Am. St. Rep. 770.]

**Boundaries—Description—Natural Objects.**

6. Where a deed conveys land upon a certain hill, extending from the foot of the bluff or rocky hill westward, bounded on the easterly side by the foot of the bluff, and the eastern boundary of the hill is described in the evidence as a perpendicular bluff of asphaltic rock with one or two "sags" that are not perpendicular, the bluff being easily distinguishable, the eastern boundary of the land is the foot of the bluff, and not a fence erected after the conveyance by the adjoining eastern owner 110 feet east of the foot of the bluff, though there is testimony that this was done by agreement with the owner of the land conveyed, but not that the parties agreed that it was the line between their lands.

[As to rules governing inconsistent or uncertain boundaries, see note in 30 Am. Dec. 734; 129 Am. St. Rep. 990.]

**Words and Phrases—"Bluff."**

7. A "bluff" is defined as a high, steep bank, as by a river, the sea, a ravine, or a plain, or a bank or headland with a broad, steep face.

**Words and Phrases—"Hill."**

8. A "hill" is defined as a natural elevation of land of local area and well-defined outline; a more or less rounded elevation, as contrasted with a peaked or precipitous one.

**Boundaries—Ascertainment—Nature and Form of Remedy—Suit in Equity.**

9. Under the express provisions of Section 518, L. O. L., a court of equity has jurisdiction to determine a controversy between the owners of adjacent tracts of land as to the boundary line between them.

[As to equity jurisdiction in case of confusion of boundaries, see note in 15 Am. Dec. 745.]

From Columbia: James A. Eakin, Judge.

This is a suit in equity by the Columbia City Land Company against Charles S. Ruhl to declare, determine and establish a boundary line between the lands of plaintiff and defendant. The Circuit Court rendered a decree for defendant, and plaintiff appeals. Respondent now moves to dismiss the appeal.

DENIED.

*Messrs. Dillard & Day,* for the motion.

*Mr. Loring K. Adams* and *Mr. George M. McBride, contra.*

Mr. Justice Moore delivered the opinion of the court.

This is a motion to dismiss an appeal. A decree was rendered in this cause December 18, 1912, establishing a boundary between contiguous lands of the parties hereto, and appointing commissioners to mark upon the ground the dividing line thus ascertained. Desiring to review such determination, the plaintiff on June 2, 1913, caused to be served and filed a notice of appeal but did not serve or file an undertaking therefor until the 13th of that month. Attempting to abandon the experiment undertaken to secure a reversal of the decree, the plaintiff on June 21, 1913, caused to be served and filed another notice of appeal and an undertaking thereon. The transcript having been filed with our clerk, this motion was interposed, based on the grounds, *inter alia,* that the order appealed from is not final, and that the attempt to take a second appeal was not made until after the expiration of the time prescribed.

1. Considering these reasons in the order stated, the decree complained of ascertained the location of

the boundary by course and distance from a given point, and left to the commissioners the exercise of no discretion or judgment, but required of them the performance of a ministerial duty only, by indicating, by proper monuments, where the dividing line was thus ascertained to be. The decree sought to be reviewed was a final determination of the issues involved, within the meaning of Section 548, L. O. L.: *Marquam* v. *Ross,* 47 Or. 374 (78 Pac. 698, 83 Pac. 852, 86 Pac. 1).

2. No appeal in this cause having been taken when the decree was rendered, six months from the entry thereof were originally allowed in which to take an appeal: Section 550, subd. 5, L. O. L. This statute was amended by abridging the six months, thus permitted to initiate a review of a judgment or decree, to 60 days; Laws Or. 1913, c. 319. The amendment referred to contains a clause as follows:

"Provided, that in all cases where the right to an appeal to the Supreme Court shall exist at the time this act shall come into force, the time for taking such appeal is hereby extended for the period of sixty (60) days thereafter."

This later enactment contained no emergency clause, and took effect 90 days from the end of the session at which it was passed: Article IV, Section 28, of the Constitution. The session of the legislative assembly at which the amendment was passed ended March 4, 1913 (Laws Or. 1913, p. 866), and hence the act went into effect June 3d following.

It is argued by defendant's counsel that as the first notice of appeal was served and filed prior to June 3, 1913, and as the attempt to abandon such undertaking to review the decree was not made until June 21, 1913, the right to appeal did not exist when the amendment referred to took effect, and hence the enactment did not extend the time for taking the appeal, which limit

expired six months after the entry of the decree, or on June 18, 1913. An appeal is taken by a party to a judgment or decree by giving in open court, at the time the determination is entered, an oral notice of appeal, or by serving upon the adverse party or his attorney, and filing with the clerk of the trial court at any time within six months from the entry of the decree or judgment, a written notice of appeal. An appeal is perfected by serving and filing, within 10 days from the giving of such notice, an undertaking on appeal. The adverse party is allowed five days within which to except to the sufficiency of the sureties on the undertaking: "From the expiration of the time allowed to except to the sureties in the undertaking, or from the justification thereof if excepted to, the appeal shall be deemed perfected": Section 550, L. O. L.

3. Where a party to a judgment or decree has taken and perfected an appeal, his right to have the determination of the trial court reviewed is exhausted, and he cannot thereafter take another appeal in the same cause: *Schmeer* v. *Schmeer,* 16 Or. 243 (17 Pac. 864); *McCarty* v. *Wintler,* 17 Or. 391 (21 Pac. 195); *Nestucca Wagon Road Co.* v. *Landingham,* 24 Or. 439 (33 Pac. 983); *Harrington* v. *Snyder,* 53 Or. 573 (101 Pac. 392); *Hanley* v. *Stewart,* 54 Or. 38 (102 Pac. 2); *Moon* v. *Richelderfer,* 56 Or. 246 (108 Pac. 178).

4. Where, however, such party attempts to appeal, but in consequence of some irregularity the appeal is not perfected, the endeavor to have the decree or judgment reviewed may be abandond, since the right to appeal still remains: *Holladay* v. *Elliott,* 7 Or. 483; *Van Auken* v. *Dammeier,* 27 Or. 150 (40 Pac. 89); *Newberg Orchard Assn.* v. *Osborn,* 39 Or. 370 (65 Pac. 81); *Osborn* v. *Logus,* 28 Or. 302 (37 Pac. 456, 38 Pac. 190, 42 Pac. 997); *Fisher* v. *Tomlinson,* 40 Or. 111 (60 Pac.

390, 66 Pac. 696); *In re Skinner's Will,* 40 Or. 571 (62 Pac. 523, 67 Pac. 951).

In the case at bar as the first undertaking was not filed within the time limited, the appeal was not per-fected, whereupon plaintiff's counsel properly aban-doned the attempt and took another appeal, and "the right to an appeal to the Supreme Court" within the meaning of the amendment of February 28, 1913, ex-isted until the latter effort to appeal was perfected; the extension granted by the statute not having elasped in the meantime.

It follows that the motion should be denied, and it is so ordered.                        Motion Denied.

Mr. Chief Justice McBride took no part in the con-sideration of this motion.

--------

Affirmed April 21, 1914.

On the Merits.

(141 Pac. 208.)

The facts in this suit are fully stated in the opinion of the court.

For appellant there was a brief over the names of *Messrs. Sinnott & Adams* and *Mr. George M. McBride,* with an oral argument by *Mr. Loring K. Adams.*

For respondent there was a brief over the name of *Messrs. Dillard & Day,* with an oral argument by *Mr. William B. Dillard.*

Department 1.   Mr. Justice Ramsey delivered the opinion of the court.

This is a suit for a decree determining and settling a boundary line between lands of the plaintiff and of

the defendant in Columbia County. The complaint alleges: That the plaintiff and the defendant are owners of adjacent lands situated in the county of Columbia, State of Oregon. That there is a controversy and dispute between the plaintiff and the defendant concerning their boundary and dividing line. The property of both the plaintiff and the defendant is situated in the original donation land claim of Abram C. Neer and wife; the property of the defendant being immediately east of and adjoining that of the plaintiff. That the boundary and dividing line between the plaintiff and the defendant, claimed by the plaintiff, is as follows: Beginning at a point in the north line of the F. A. Lamont donation land claim at the foot of the rocky hill known as "Germany Hill," where said north line is intersected by the line indicated by the old fence of John Gum, now deceased, which said beginning point is 1,078.2 feet west from the southeast corner of said donation land claim of Abram C. Neer and wife; running thence northerly, and following the said old fence of John Gum, as shown by said fence and the stakes or hubs lately set along said line; and following the extension of said fence along and below the foot of said hill to a point where the foot of said hill intersects the east boundary line of said Neer claim.

The complaint prays for a decree declaring the boundary line between the plaintiff and the defendant to be as set forth in the complaint and above described. The answer denies each and every allegation of the complaint, except as admitted in said answer.

The defendant admits, by his answer, that he is the owner of all that portion of the south half of the original donation land claim of Abram C. Neer and wife, referred to in the complaint, excepting so much thereof as lies on the hill known as "Germany Hill"

and west of the foot or base of a certain basaltic rock extending through said donation land claim, in an almost due north and south direction, and constituting the eastern boundary of said hill, and that the plaintiff claims to own the remainder of the south half of said donation land claim.

The answer further alleges that the western boundary of his said premises, and the boundary line between his said premises and the lands so claimed by the plaintiff, is the face of a certain claim of cliffs or almost perpendicular rock bluffs, which forms the easterly border of that certain ridge known as "Germany Hill," and cuts the south boundary of said donation land claim at a point 1,220.2 feet west of the southeast corner of said claim; thence runs almost due north in an unbroken line to a point on the northeasterly boundary line of said donation land claim, which lies north twenty-nine degrees, twenty-seven minutes west, 2,884.9 feet from the southeast corner of said claim. And the defendant claims the line of said cliffs or bluffs, and none other, to be the true boundary line between the premises of the defendant and the lands owned by the plaintiff in said county, and, as to said line, the defendant alleges that it has never been lost, obliterated or confused, except in so far as brush has been allowed to grow up and somewhat obscure the same. The answer prays that the suit be dismissed.

The new matter of the answer was denied by the reply.

The court below made findings and entered a decree in favor of the defendant, and declaring the boundary line to be as claimed by the answer, and not as alleged by the complaint. The plaintiff appeals.

The decision of this case depends upon the meaning of a deed of conveyance made by Abram C. Neer and

his wife, Elizabeth, to the late Judge E. D. Shattuck on the 16th day of March, 1868, and recorded on pages 57 and 58 of volume D of the records of deeds of Columbia County on March 28, 1868. By this deed said grantors conveyed to said grantee the following described tract of land:

"All that portion of the donation land claim of Abram C. Neer and Elizabeth Neer *which is upon what is known as 'Germany Hill,'* westerly of St. Helens, extending from the foot of the bluffs or rocky hill westward to the land of Frank N. Gorick, being the westerly 120 acres, a little more or less of the southerly half of said donation land claim, bounded on the northerly side by land of Jackson Peacher, on the easterly *by the foot of the bluff,* on the southerly by land of F. A. Lamont, on the westerly by land of F. N Gorick."

5. The entire description in a deed should be considered in determining the identity of the land conveyed, and every part ought, if possible, to take effect and be operative: 13 Cyc. 627.

6. The first thing that attracts the attention in this description is that the grantors conveyed all that part of the claim referred to "which is upon what is known as 'Germany Hill.'" This part of the description indicates an intention to convey only land upon said hill. The deed conveys 120 acres, "a little more or less." The land conveyed extends *from the foot of the bluff or rocky hill westward* to the land of Frank N. Gorick, and it is bounded on the easterly side by the *foot of the bluff.* The foot of the bluff is the easterly boundary of the land conveyed. This deed did not convey any land east of the foot of said bluff, and the land conveyed is described as being *on Germany Hill.*

Abe Neer, a son of the grantors, testifies that he assisted in selling said land to Judge Shattuck, and

that they could not get a surveyor to survey the land. He says:

"So I went to work. I told the judge, then, so he went to work and got the deed and leave it to me, and we kind of had no description, unless we put it in the rocky hill—foot of bluff—foot of the rocky hill, I think, is what he said; we all said that suits us first rate."

The memory of this witness is not accurate, however, as to that transaction, as he seems to think that he signed the deed, although the deed appears to have been signed by his father and mother only.

A fence was built near the foot of the bluff by John Gum, who owned at that time part of the Neer donation land claim, and the plaintiff claims that this fence was built on the true line between the lands of the plaintiff and of the defendant. This fence was built *after* the conveyance referred to *supra* was made to Judge Shattuck.

Hez. Caples testifies that this fence was built there by mutual agreement between his brother and John Gum.

Abe Neer testified that when Judge Shattuck read the deed to them the Judge said:

" 'Now to the foot of that rocky hill.' * * We thought it was a good thing; always put the rocky hill. We didn't think it was any good at all."

S. A. Miles, an old resident of Columbia County, was a witness for the plaintiff. He was administrator of the estate of John Gum, and was familiar with Gum's lands. Mr. Miles testified that there was a fence there near the bluff of Germany Hill, running north and south, and, speaking of the location of this fence, he says:

"Well, not exactly at the foot of the bluff—quite a little ways, if I recollect right; possibly, I suppose it

is 100 feet in one place; * * it [the fence] varies a distance from the bluff. * * There was a fence there. I don't remember just how far from the main bluff. The hill was pretty steep in places, but I think it was farther from the bluff at this place it was farther north, in places. The fence had been put up a long time—quite a while ago; was there the last time I noticed it. I had not been at that corner you speak of—that is, the fence on the southwest—for quite a little while. I wound up the estate for the old man Gum, * * and I have been there and am acquainted with the ground and that location for 60 years. * * I was there when he (Gum) put up the fence. * * He made the fence in the timber, cleared out a fence there."

Asked whether the fence built by Gum was on the line, Mr. Miles answered:

"No; it was not my understanding that it was on the line. He [Gum] said he fenced away from the bluff to give the cattle room to pass around. There was only one place in the bluff coming down from the old Neer residence north—I mean west of Neer residence north—and persons could pass through agreeably, and he made his fence to—so that he would not shut up the pathway of stock coming from off the hills. * * "

On cross-examination, this witness, when asked whether John Gum built the fence referred to on his own land, answered:

"On his land he claimed it was, but I asked him why didn't he run up to the bluff, and save labor running the fence north and south, and he told me the reason— one of them, there was only one or two places where stock could get down, up and down to the bluff, and he left that open, so as to give them a pathway north and south along parallel with his fence."

This witness estimated the distance between Gum's fence and the bluff at 100 feet.

George C. Lamont, a witness for the defendant, resides on Germany Hill near the line in dispute, and is familiar with the lands there. Asked what is the eastern limit of that hill, he answered:

"Well, a perpendicular bluff. * * A perpendicular bluff from the time that I say, by the county road where the two claim—by the Kelley and the Aaron Broiles claim—comes together, it is practically a perpendicular bluff, although there is one or two places, understand, that you can walk down; get down by holding on to the brush," etc.

This witness says that said bluff is perpendicular basaltic rock, but that there are "sags" in it that are not perpendicular, and that it is easy to distinguish this bluff, and that it extends more than a mile. He estimates that it is 75 feet from the foot of the bluff to the top.

C. T. Prescott, county surveyor, testified:

"That the eastern and southern border of that hill [Germany Hill] consists mostly of basaltic rock. In general, it is almost a perpendicular bluff on the east and south sides. The whole line of the bluff would be fully a mile—perhaps a mile and a quarter."

This witness made a survey for each of the parties; but he ran where the parties respectively directed him to run, and he did not attempt to decide where the true line was.

There is considerable evidence in this case. We have read and considered it carefully, but it seems to us that the controlling evidence is the deed made by Abram C. Neer and Elizabeth Neer to Judge Shattuck on March 16, 1868. We have set out *supra* the description contained in said deed. The oral evidence is valuable as showing the condition of the land referred to in the deed, so as to enable the court to apply the terms of that instrument to the premises in dispute.

The plaintiff in its brief (page 25) says, *inter alia:*

"This line [line claimed by the plaintiff] begins 1,078.2 feet from the southeast corner of the Neer claim, and is situated about 142 feet east of the face or top or the rim rock or precipice at the southern boundary of the property of the plaintiff. The side hill is very steep at that place and along from below the top of the rim to this boundary line. The intervening tract between the face of the cliff and this line has grown up in brush, and any old lines, if any there were, are obliterated. The old Gum fence has been obscured and covered up by the brush and small trees; but this Gum fence was placed there over 30 years ago. Hez. Caples, who formerly owned land near there, says that the fence was put there by mutual consent. He refers to the consent of John Gum, the former owner, and Doctor Caples, his brother, who was the husband of Lucinda M. Caples, a former owner of the plaintiff's property."

It is true that the witness Caples says that the Gum fence was put there by the mutual consent of Gum and his brother; but he does not say that these parties agreed that it was on the line between their lands. Mr. S. A. Miles says that Gum told him it was *not* on the line, and that he left the space between the fence and the bluff for a passage way for stock.

The deed from Abram C. Neer and wife to Judge Shattuck describes the land conveyed to the latter as "all that portion of the donation land claim of Abram C. Neer and Elizabeth Neer *which is upon what is known as Germany Hill,* westerly of St. Helens, extending from the foot of the bluff or rocky hill, westward to the land of Frank N. Gorick, being the westerly 120 acres, a little more or less, of the southerly half of said donation land claim, bounded on the northerly side by land of Jackson Peacher, on the easterly *by the foot of the bluff,* on the southerly side by the land of F. A. Lamont, on the westerly by land of

F. H. Gorick.'' The land in dispute amounts to four or five acres, and the evidence shows that no part of it is on Germany Hill. The easterly boundary of the land of the plaintiff, and the westerly line of the defendant's land, is the foot of the bluff mentioned in said deed.

7. Webster defines the word "bluff" as a high, steep bank, as by a river or the sea, or beside a ravine or a plain; a cliff with a broad face. Stormonth defines the word "bluff" as a high, steep bank, generally facing the sea, or a river. The Century Dictionary defines the word thus: A hill, bank, or headland, with a steep broad face; a high bank presenting a steep or nearly perpendicular front.

8. According to Webster, a *hill* is a natural elevation of land of local area and well-defined outline; a more or less rounded elevation, as contrasted with a peaked or precipitous one. The eastern boundary of the plaintiff's land is shown by the evidence to be a *bluff* rather than a *hill*.

The plaintiff relies upon the case of *Kerr* v. *Duvall,* 62 Or. 470 (125 Pac. 830). Justice MOORE, delivering the opinion of the court in that case, says, *inter alia:*

''It appears that from Beaver Creek and from Deer Creek the hill referred to rises very gradually for some distance, and then the ascent becomes quite steep. In referring to this acclivity, J. C. Hefty, a surveyor, who, at defendants' request run a line for the westerly border as described in the codicil, appearing as their witness, was asked: * * 'As a matter of fact, the hill proper begins where the land begins to slope up?' He replied: 'No, sir; it does not. All valleys have a slope, and all bottom lands have a slope; but we don't call them hills. The foot of a hill is defined as the beginning to an abrupt rise.' The definition thus given is adopted as applicable to the disputed boundary herein, particularly so when construing the language of a will which locates a line by and along the foot of a hill.''

The case just cited adopted the definition given by a surveyor, and held that the *foot of a hill* is the beginning of *an abrupt rise.* We are unable to understand that that case sustains the contention of the plaintiff in this case. Here the plaintiff seems to contend that the foot of the bluff is 100 feet or more east of the beginning of "the abrupt rise." However, the line in dispute in this case is "the foot of the bluff," which is the easterly boundary of Germany Hill. The deed to Judge Shattuck manifested an intention to convey only land that is on said hill, and we deem it unreasonable to believe that the grantors in that deed intended to convey any land east of the face of said bluff, or any part of the land in dispute.

We hold that the easterly line of the plaintiff's land and the westerly line of the defendant's land were correctly determined by the findings and the decree of the court below, and that the said line runs as follows, to wit: That the western boundary line of the defendant's said premises and the boundary between his said premises and the lands claimed by the plaintiff in Columbia County, State of Oregon, is the face of a certain chain of cliffs or almost perpendicular bluffs, which forms the easterly border of that certain ridge known as "Germany Hill," and intersects the south boundary of the donation land claim of Abram C. Neer and wife, at a point south 88 degrees and 32 minutes west 1,220.2 feet from the southeast corner of said donation land claim, and thence runs along almost due north in an unbroken line to a point on the easterly boundary line of said donation land claim, which is north 29 degrees and 27 minutes west 2,884.9 feet from the southeast corner of said claim, and that said line is the true boundary line between said tracts of land owned by the plaintiff and the defendant, respectively.

9. We hold that under Section 518, L. O. L., a court of equity has jurisdiction to determine a controversy between the owners of adjacent tracts of lands as to the boundary line between their said lands.

We find no error in the proceedings of the court below.

The decree of the court below is affirmed.

AFFIRMED.

MR. JUSTICE BURNETT and MR. JUSTICE EAKIN concur.