## BOEHMER *v.* SILVESTONE.

### (174 Pac. 1176; 186 Pac. 26, 31.)

**Appeal and Error—Right of Review—Inconsistent Act.**

1. Act of plaintiff in suit for accounting by defendant as having wasted a trust fund, in obtaining an order for delivery to him of a life policy, which he had put up as security, *held*, not so inconsistent with his attitude on the trial as to defeat his appeal.

**Appeal and Error—Decision Reviewable—Final Decree.**

2. Decree dismissing, on the ground of a bequest to plaintiff being void, suit for accounting is final as regard his right of appeal, and not affected in that respect by his subsequently obtaining order permitting withdrawal from files a paper offered in evidence.

**Appeal and Error—Serving and Filing Undertaking—Effect of Omission.**

3. Failure to serve and file undertaking, one of the acts for perfecting appeal enumerated by Section 554, L. O. L., as amended by Laws of 1913, page 619, concluding: "And after compliance with the provisions hereof the appellate court shall have jurisdiction of the cause, but not otherwise," does not defeat appeal, but is an omission after notice of appeal, correction of which, under Section 550, subdivision 4, may be permitted.

**Appeal and Error—Notice of Appeal—Service—Amendment of Return.**

4. The court on appeal will permit amendment of the return on the notice of appeal to correctly state the facts as to service.

**Appeal and Error—Transcript—Sufficiency.**

5. The transcript on appeal is sufficient where, taking it and the abstract together, the court has before it everything necessary to enable it to pass on the case.

## ON THE MERITS.

**Trusts—Trustee Estopped from Denying Creation of Trust.**

6. Trustee, having accepted appointment as such and having received trust fund, will be estopped from questioning the creation of the trust, and from denying the right of beneficiary to the trust fund.

**Trusts—Termination of Trust by Trustee.**

7. If trustee for any reason deemed that the trust should be terminated and the money paid over to the beneficiary, the matter should have been presented by him to the court, and authority therefor obtained from the court.

**Trusts—Trustee to Assume Validity of Trust.**

8. A trustee must assume the validity of the trust under which he acts until it is actually impeached, though he may have some suspicion that there may have been fraud or collusion in the appointment or settlement.

**Trusts—Trustee's Knowledge of Facts That Would Defeat Beneficiary's Title.**

9. If a trustee obtains knowledge of facts that would defeat the title of the beneficiary and give it to another, he is not justified in communicating facts to the other person; his duty being to manage property for beneficiary, and not make admissions prejudicial to rights of beneficiary.

**Trusts—Duty of Trustee to Use Ordinary Prudence.**

10. A trustee must use such care for the safety of the trust fund as a man of ordinary prudence uses in his own business of a similar nature, and is held to a strict accountability for a faithful performance of the duties of his trust.

**Trusts—Appropriation of Property by Trustee's Agent.**

11. If a trustee employs an agent, and the agent appropriates the property intrusted to him, the trustee will be held responsible.

**Trusts—Liability of Trustee for Trust Funds Deposited in Bank.**

12. If money is deposited in the bank in such a manner that it is not under trustee's own exclusive control, as where money is deposited, so that it cannot be drawn without the concurrence of another person, it is at the peril of the trustee, and he is liable for any loss occasioned thereby.

**Trusts—Investment of Trust Funds.**

13. A trustee, who receives trust fund in cash, is required to invest funds in a manner that will be safe and yield a reasonable rate of return to beneficiary, and must follow direction and powers in instrument of trust, if any, as to time, manner, and kind of investment, or in absence of such directions and powers must be governed

by general rules of court or statutes, and by sound discretion and good faith.

### Trusts—Trust Funds to be Invested in Safe Securities.

14. A trustee with cash funds to invest must not speculate, but make investments with a view to permanent investment, considering both probable income and probable safety of capital, and should invest in government or state securities, or other gilt-edged securities, or in bonds or mortgages on unencumbered real estate.

### Wills—Reference to Other Will.

15. Where husband's will referred to will of deceased wife, and so described it as to leave no doubt as to its identity, and adopted provision therein with reference to certain trust fund, the provisions of both wills should be considered in relation to the trust fund.

### Wills—Construction According to Testator's Intent.

16. Under Section 7347, L. O. L., testator's design governs, if it can reasonably be ascertained.

### Trusts—Action for Accounting of Trust Fund may be Against Trustee and Third Person.

17. In suit for accounting of trust fund by beneficiary of trust, third person, to whom trustee lent money pursuant to plan entered into by trustee, beneficiary, and third person, whereby third person was to permit beneficiary to have money before termination of trust, was properly joined with trustee as defendants.

### Trusts—Reasonableness of Attorney's Fees.

18. Where trustee made loan of $5,000 trust fund, with the understanding that the borrower was to permit beneficiary to have money before termination of trust, attorney's fee of $1,000, charged beneficiary by third person, to be paid out of the trust fund, *held* excessive; but, in view of considerable trouble caused third person by the indorsement of numerous checks by beneficiary, the third person will be allowed fee of $150 for legal services.

### Trusts—Compensation of Trustee.

19. Trustee will be compensated for services up to time that nearly all of the fund is expended, but not thereafter.

McBRIDE, C. J., Dissenting.

From Multnomah: JOHN P. KAVANAUGH, Judge.

On motion to dismiss appeal.

OVERRULED CONDITIONALLY.

*Mr. Julius Silvestone* and *Mr. Seneca Fouts,* for the motion.

*Mr. L. H. Tarpley* and *Mr. E. E. Heckbert, contra.*

McBRIDE, C. J.—This was a suit for an accounting, in which it was charged that defendant Julius Silvestone, being the trustee for plaintiff of a certain trust of $5,000 bequeathed to him by his grandmother, had fraudulently conspired with defendant Fouts to waste, dissipate and misuse such fund, and praying for the removal of Silvestone as trustee; for a discovery of all the dealings of defendants with such fund; for an accounting by Silvestone, in which he should be required to pay the same into court; for the appointment of a new trustee, and for general equitable relief. The defendants, who are both attorneys at law, appeared separately and upon the trial a decree was rendered dismissing the case without prejudice.

The complaint, which is too lengthy to be reproduced here, charged in substance that Mary Boehmer, the grandmother of plaintiff, died in 1908, leaving a will whereby she bequeathed to Jacob Boehmer, plaintiff's grandfather, all her property, subject, however, to a trust in favor of plaintiff in the sum of $5,000, which should be held in trust for plaintiff until he should arrive at the age of 30 years, and providing that in no event was he to receive the legacy until he had attained that age, and further providing that Jacob Boehmer should hold the interest of plaintiff during the lifetime of said Jacob Boehmer, and that after his death a trustee should be appointed to hold and manage such fund paying over the income of said property to plaintiff at stated periods; that Jacob Boehmer died in 1912, and that prior to June 20, 1913, the estates of both Jacob and Mary Boehmer were settled up and Julius Silvestone was appointed by the County Court trustee of said fund and took possession thereof. That after plaintiff had attained the age of

21 years and while he was still uninformed as to his exact interest in said estates, he went to the defendants who occupied offices together as attorneys at law, and inquired of Silvestone if there was any method by which he could obtain possession of the trust fund before attaining the age of 30 years; that Silvestone referred him to Fouts, who told him that for a fee of $1,000 he could obtain the money, the scheme being that plaintiff should jointly with Fouts execute a note for $5,000, payable in 1923 to Silvestone as trustee, and also a note to Fouts for $4,000, payable in 1923, and should insure his life for the sum of $5,000 in favor of Silvestone as trustee as security for the joint note, and that thereupon Silvestone should pay over the $5,000 to Fouts, who in turn was to pay over $4,000 to plaintiff. The complaint alleges the carrying out of such arrangement so far as the execution of the notes is concerned, but avers that plaintiff is not informed as to how much of said fund was paid over to Fouts, and charges that Fouts had paid over to him the sum of $1,860 only, and charges further on information and belief that defendants have converted the balance of the fund to their own use.

The reasons given by the court for dismissing the suit without a decree upon the merits were that the bequest to plaintiff was void, and that if plaintiff had any remedy it must be in some other form of action.

Each defendant files a motion to dismiss the appeal. The reasons assigned by Silvestone are (1) that prior to the attempted appeal the plaintiff obtained an order of the court for the possession of the insurance policy held by Silvestone as collateral, which action it is claimed is inconsistent with his attitude as an appellant and a ratification of the transaction in which the insurance policy was delivered; (2) that the decree

appealed from is not a final order, but that the final order was the one made by the court, permitting plaintiff to withdraw the insurance policy from the files; (3) that no undertaking on appeal herein has been served upon defendant Fouts; (4) that the appellant has failed to file in this court any transcript or abstract within the time prescribed by statute for such filing; (5) that neither the transcript nor abstract as filed in the Circuit Court contains any statutory proof of service of the undertaking on appeal, upon the adverse party as required by the Code; (6) that no sufficient transcript on appeal has been filed herein, and (7) that no notice of appeal has been served upon any of the adverse parties, as prescribed by statute.

The defendant Fouts moves to dismiss for the reason that no service of the undertaking was made upon him. We will consider the motions in the order named, prefacing our observations with the remark that the privilege of an appeal to this court is one which the courts are loath to abridge or deny upon merely technical grounds, and with the added caution that no statement herein is to be construed as an intimation as to the merits of the charges made by plaintiff against the defendants. That question will properly arise when the case is heard upon the testimony with which at present we have nothing to do.

1. As to the first objection, we do not think the act of the plaintiff in asking that the insurance policy be delivered to him is so inconsistent with his attitude upon the trial as to defeat his appeal. The policy was a valid document in any event, and if plaintiff's contention in the suit was correct and the trust fund had been wasted, he might well contend that it should be returned to him. The defendants are placed in no worse position by the fact that he made the request and

secured the order permitting him to withdraw the policy, as it appears that he did not withdraw it, but on the contrary it is on the files and with the papers sent here, where it will remain to abide the event of the controversy.

2. The second objection that the decree of May 30, 1917, was not final cannot be sustained. That decree finally and fully settled, so far as the Circuit Court was concerned, the rights of the plaintiff in that suit, and the fact that after the decree the plaintiff obtained permission to withdraw from the files a paper offered in testimony in the case, could not change the status of the case.

3. The third objection argued by both defendants is that there was no service of a copy of the undertaking upon the defendant Fouts, and that therefore the appeal must fail. The defendants appeared separately throughout and were entitled to separate service of the undertaking. They occupied the same offices and there is no question as to the sufficiency of the service upon Silvestone, and merely a technical failure to serve upon his codefendant would not stop the appeal. It is settled by the case of *Dowell* v. *Bolt*, 45 Or. 89 (75 Pac. 714), that the failure to serve an undertaking is not an omission that will defeat the appeal, and that such service is not a jurisdictional requirement, but an omission that may be corrected in this court. Counsel for respondent ingeniously attempts to draw a distinction between Section 554 as it stood when the case of *Dowell* v. *Bolt* was decided, and the section as it stands since the amendment found at page 619, Laws of 1913. There is no actual difference in the meaning. Section 554, *supra,* after enumerating the various acts required in order to perfect an appeal, including the service and filing of the undertaking, concludes "And

*thereafter* the appellate court shall have jurisdiction of the case, but not otherwise." The amended section, after similar recitals, concludes with the words, "And *after compliance with the provisions hereof* the appellate court shall have jurisdiction of the cause and not otherwise." The meaning is exactly the same in both instances, and both should be read in connection with subdivision 4, Section 550, L. O. L., which is broad enough to permit the correction of any omission occurring by mistake, and not going to the jurisdiction where the appealing party is ready to correct it when brought to his notice.

4. The affidavit of Miss Masters is sufficient to show that due service of the notice of appeal was made upon defendant by leaving copies with a person in charge of the office in their absence. It is true that some of the statements in this affidavit are partly contradicted by the affidavit of the stenographer in charge of the office of Silvestone and Fouts, in which she denies that she was in the employ of Silvestone, but does not deny that she was in charge of his office. We are inclined to credit Miss Masters' statement as to what occurred upon the occasion of her visit to serve the notice of appeal and will permit the return to be amended as requested. The appellant will be permitted to serve a copy of the undertaking on defendant Fouts within ten days after this hearing under penalty of having his appeal dismissed for failure to do so.

Another objection is to the sufficiency of the transcript. Taking the transcript and the abstract together we have before us everything necessary to enable the court to pass upon the case, and the objections are without merit.

The motion to dismiss will be overruled, conditioned, however, upon the amendment of the return upon the

notice of appeal and the service of a copy of the undertaking upon the defendant Fouts, and a return of such service as indicated above.

OVERRULED CONDITIONALLY.

---

(Reversed and Decree Rendered December 16, 1919.)

## ON THE MERITS.
### (186 Pac. 26.)

Department 2.

This is a suit for an accounting by the defendants of a trust fund of $5,000 left to the plaintiff, Robert Lee Boehmer, in trust by the last will and testament of his grandmother, Mary Boehmer, deceased, and by the last will and testament of his grandfather, Jacob Boehmer, deceased, and for the restoration of the trust estate. The plaintiff, Robert Lee Boehmer, is so named in the will of Mary Boehmer, and called Christian Armen Boehmer in the will of Jacob Boehmer. The trial court dismissed the complaint. Plaintiff appeals.

A general outline of the main facts necessary to an understanding of the case is here set forth. On January 5, 1908, Mary Boehmer, the grandmother of the plaintiff, died, leaving a last will and testament, which was duly admitted to probate in the County Court of Multnomah County on January 23, 1908. The provisions of this will, in so far as the same relates to the plaintiff, are as follows:

"First: I give and bequeath to my grandson, Robert Lee Boehmer (son of my deceased son Christian Boehmer) the sum of $25.00. * *

"Fifth: Having lived in accord and happiness with my beloved husband, Jacob Boehmer, for more than forty years, and the property herein devised having been accumulated by our joint efforts, it is my will and I give, bequeath and devise all of the rest and residue

of my property of whatever kind and nature, whether real, personal or mixed, and wheresoever, situated, of which I shall die seized or possessed (said property consisting principally of a quarter block on which I now reside at the Southwest corner of Everett and Tenth Streets of the City of Portland, Oregon, commonly known as Lots 5 and 8, in Block 70, of Couch's Addition to the City of Portland, Oregon) to my beloved husband, Jacob Boehmer, for his use and benefit with full power to handle, control, manage and contract regarding said quarter block as he may see fit and to dispose of, sell, mortgage, hypothecate, convey and transfer said quarter block or any part or parcel thereof, either in fee simple or otherwise, as he may see fit, and in fact to do with the same as he may see fit and without the necessity of the purchaser or mortgagee of said property seeing to the application of the proceeds thereof or any part thereof; excepting the application of the proceeds devised by the 7th clause of this my last will to my sister-in-law, Carrie Boehmer, with a limitation, however, that in case said quarter block shall not be sold during the lifetime of my said husband, or in case said quarter block shall be sold during the lifetime of my said husband and my said husband shall die being seized or possessed of money or property arising from the sale of said quarter block, then after the death of my husband, I give and bequeath to my said grandson, Robert Lee Boehmer, the sum of $5000.00, which shall be a charge against the said money or property arising from the sale of said quarter block of which my said husband shall die seized or possessed, and if no proceeds remain from said sale of said quarter block made during the lifetime of my said husband, then said gift and bequest to my said grandson shall lapse and become of no effect.

"Sixth: It is my will that in no event shall my said grandson, Robert Lee Boehmer, come into possession of said bequest granted him by the fifth clause of this my will until he shall arrive at the age 30 years, and in case my said husband shall die before my said grandson shall arrive at the age of 30 years, I then nominate and appoint Maurice Costello, as trustee to take, hold

and handle any money that shall be coming to my said grandson under· said 5th clause of my will until such time as my said grandson shall arrive at the age of 30 years, provided that the income. or interest arising from any money coming to my said trustee's hand shall be paid to my said grandson or his lawful guardian from time to time in annual or shorter periods as may be convenient.''

This will was executed January 13, 1908. On April 11, 1912, Jacob Boehmer died, leaving a last will and testament, which was duly probated in the County Court of Multnomah County, April 22, 1912. In this will, which was executed December 28, 1909, we find the following reference to the plaintiff:

''Third: I have not provided for my grandson, Christian Armen Boehmer, the son of my deceased son, Christian Boehmer, because he is amply provided for in the last Will and Testament of my deceased wife, by which $5,000.00 is to be paid to my grandson if anything remained of his grandmother's estate after my death.''

Maurice Costello, who was named as trustee of this fund in the will of Mary Boehmer, having died, L. H. Tarpley was appointed as trustee of the trust fund of $5,000, the plaintiff then being nineteen years of age. Mr. Tarpley qualified as such trustee and the trust fund was turned over to him by the executor of the last will and testament of Jacob Boehmer deceased. On January 9, 1914, the plaintiff became twenty-one years of age. In November, 1914, Boehmer applied to Mr. Tarpley, his trustee, for an advance of $200. This was refused for the reason that plaintiff had drawn all the interest that was due him and for the further reason that Mr. Tarpley believed plaintiff was squandering his money. Plaintiff says that soon thereafter he consulted the defendants, as attorneys, in order to find some way that he could have the $200 advanced to him.

Thereupon the defendants prepared a notice to Mr. Tarpley requiring him to give an accounting of the $5,000 trust fund. This notice was served on Mr. Tarpley by defendant Silvestone, whereupon Mr. Tarpley signified his willingness to be relieved as trustee. Plaintiff was informed of this and inquiry was made of him as to whom he desired appointed trustee. He mentioned his uncle who lived in Wasco, Oregon, and too far away from Portland to conveniently act. The defendant, Fouts, said to the plaintiff:

"How would you like to have this money right away or the biggest part of this money right away?"

Plaintiff informed him that he would like to have it. Mr. Fouts told him he thought he could so arrange the matter. He suggested it would be necessary for plaintiff to take out a life insurance policy in the sum of $5,000. According to plaintiff's version of the matter it was deemed necessary to have a trustee appointed who would be willing to turn the money over. After talking with one man who would not accept the appointment as trustee upon such condition, on November 14, 1914, Mr. Tarpley having resigned as trustee, defendant Julius Silvestone was appointed trustee of this $5,000 trust fund of Robert Lee Boehmer, by the Circuit Court of Multnomah County. He accepted the office and duly qualified, giving a bond for the faithful performance of the duties of said trust, and on November 16, 1914, received from the former trustee the $5,000 in cash. Thereupon it was arranged for plaintiff to obtain an insurance policy in the Oregon Life Insurance Company for the sum of $5,000, which he did. Plaintiff executed a note together with Mr. Fouts to Julius Silvestone in the sum of $4,000 payable in 1923. Plaintiff also signed receipts in advance for the sum of $400 per annum for each year's interest at 8

per cent upon the trust fund of $5,000 up to 1923. Mr. Silvestone then paid Mr. Fouts $4,000 for plaintiff. Mr. Fouts then informed the plaintiff that he had $2,850 coming to him; that the insurance policy would cost a little over $600; that there were some other expenses; that the agreed attorney's fee was $1,000; that he would have to hold out the sum of $1,000 as protection against any suit or action brought by any heirs in the event of such a case; that this $1,000 could be paid to plaintiff at the end of one year; that he could turn over to plaintiff $1,850. There was then paid to Boehmer by check $1,843. Mr. Fouts retained $515.35 to pay future insurance premiums. Mr. Fouts states that he was to receive a fee of $1,000, which he retained; that out of this he was to pay Mr. Silvestone $50 per annum for nine years, or $450 for his services as trustee, leaving as his attorney fee $550. The insurance policy was by assignment of plaintiff made payable to Julius Silvestone. Mr. Silvestone turned over to Mr. Fouts February 13, 1915, $200 and March 16, 1915, $800 and notes were executed to him by Fouts and Boehmer therefor. On various dates amounts ranging from $5 to $175 were paid to Boehmer, and at his request for his expenses and to satisfy claims against him, an account of which is stated in the brief of defendant Silvestone.

In May, 1916, Mr. Silvestone filed reports of his administration of the trust. He first reported that, with the approval of the *cestui que trust* and upon security which he deemed satisfactory, he loaned said fund to Seneca Fouts with interest at 8 per cent per annum; that plaintiff also signed the note; that the loan was further secured

"By obtaining from the borrower a policy of Life Insurance upon the life of the *cestui que trust* for

$5,000.00 in an approved Life Insurance Company, loss made payable to the undersigned as Trustee in above matter.

"That the *cestui que trust* has received all the interest due upon the said fund, and the same remains in said condition at present."

In the second report it is shown that the fund and security therefor were in the same condition as when the first report was filed. The trustee further reported as follows:

"That the undersigned trustee herewith attaches copies of the receipts of the *cestui que trust* showing that the interest to date upon the trust fund has been received by him, the said copies being marked Exhibit 'A' and 'B' respectively, and made a part of the report."

Exhibit "A" is as follows:

"This certifies that I have received of J. Silvestone, Trustee, $400.00 being interest for the year beginning November 16th, 1914, at the rate of eight (8%) per cent per annum on that certain trust fund of Five Thousand ($5000,00) Dollars, of which trust fund said J. Silvestone is Trustee for may benefit and which I am to receive on January 9th, 1923.

"(Signed)    ROBT. LEE BOEHMER."

Exhibit "B" is similar to exhibit "A," being for $400 interest for the year beginning November 16, 1915.

The defendants are attorneys occupying a suite of offices together. They are not partners but are associated together in business and at the end of each month settle up the business that they have together and the office rent and expenses. The $5,000 fund was deposited in a bank and checks drawn thereon signed by J. Silvestone, trustee, and countersigned by Seneca Fouts pursuant to an arrangement therefor.

Plaintiff testified as follows:

"Q. Now, at the time the $1,850 check was given to you by Mr. Fouts did you have a further conversation with him in regard to the matter or with Mr. Silvestone?

"A. Well, previous to getting this money when they give me this money Mr. Silvestone advised me to keep away from town, and not let anybody know that I had any money, because he said to keep quiet and not say nothing about it, and that I better leave town; go some place else outside of Portland. That was on the day previous to getting this money."

Mr. Silvestone testified to the effect that he was merely consulted by Mr. Fouts, who was attorney for Boehmer, in regard to the estate of Jacob Boehmer and in regard to the trust fund, and requested by Mr. Fouts to serve the demand upon Mr. Tarpley; that as nothing further was done in regard to the Jacob Boehmer estate, he did not consider himself as attorney for Robert Lee Boehmer in the matter of the trust fund; that he never received any pay for his services as attorney for Boehmer.

The Circuit Court found that no trust was created by the will of Mary Boehmer, and dismissed the complaint.                REVERSED.    DECREE RENDERED.

For appellant there was a brief over the names of *Mr. L. H. Tarpley, Mr. E. E. Heckbert* and *Mr. J. M. Haddock,* with an oral argument by *Mr. Haddock.*

For respondents there was a brief over the names of *Mr. Julius Silvestone* and *Mr. Seneca Fouts,* with an oral argument by *Mr. Silvestone.*

BEAN, J.—6. The defendant, Silvestone, having accepted the appointment as trustee of the $5,000 fund of Robert Lee Boehmer and duly qualified as such trustee and received the fund from the former trustee, is,

as we view it, not in a position to question the creation of the trust or deny the right of the *cestui que trust* to the fund.  Where a person has admitted the validity of a trust by seeking and securing from the court an appointment as trustee of said trust and recognizing the continuance of said trust by making to the court annual reports, as required by statute, the court has the right to enforce an accounting of the trust; and having filed reports showing that he was administering said trust, he is estopped to deny his trusteeship or his liability to account: *Roach's Estate,* 50 Or. 179 (92 Pac. 118) ; *In re Osburn's Estate,* 36 Or. 8 (58 Pac. 521) ; *Damouth* v. *Klock,* 29 Mich. 289; *Hughes* v. *Bent,* 118 Ky. 609 (81 S. W. 931) ; 39 Cyc., p. 293.

It is the position of the defendants, especially the defendant Silvestone, that as the money was paid over to Mr. Fouts upon the approval of the plaintiff, plaintiff is therefore estopped from questioning the same; that the money was loaned to Mr. Fouts upon his note also signed by the plaintiff, and that Mr. Fouts was responsible therefor.

7. By the taking of the receipts for the annual interest on the $5,000 in advance for each year until 1923, and by the whole proceeding as delineated by the defendants, as well as by the testimony on behalf of the plaintiff, it clearly appears that the money was paid over to Mr. Fouts with the understanding that the same or a large part thereof, after deducting a claim for attorney's fees and other expenses, should be paid to Boehmer, the beneficiary, and thereby subvert the purposes of the trust.  After the appointment by the court of Mr. Silvestone as trustee if for any reason he, as such trustee, deemed that the trust should be terminated and the money paid over to the beneficiary, the

matter should have been presented by him to the court and authority therefor obtained from the court.

8, 9. A trustee must assume the validity of the trust under which he acts until it is actually impeached. This is true even though he may have some suspicion that there may have been fraud or collusion in the appointment and settlement. Mr. Silvestone as such trustee cannot consistently with his duties say that no trust was created by the will of Mary Boehmer and that of Jacob Boehmer and thereby encourage or pave the way for other heirs or legatees to claim the bequest to the beneficiary. If a trustee obtains knowledge of facts that would defeat the title of the *cestui que trust* and give it to another he is not justified, in morals, in communicating facts to the other person. As further stated by the text-writer:

"His duty is to manage the property for his *cestui que trust,* and not to keep his conscience, or betray his title or interests; and he can make no admissions prejudicial to the rights of his *cestui que trust,* nor can he use his influence to defeat the purposes of the trust as declared by the creator of it": 1 Perry on Trusts, § 433.

See, also, 39 Cyc., page 91, where we find the further statement that:

"Beneficiaries are also prohibited from claiming under the trust and at the same time asserting that it is invalid, and an application by them to have it set aside meets with no favor in a court of equity after ratification, or acquiescence and laches on their part."

10–12. A trustee must use such care for the safety of the trust fund as a man of ordinary prudence uses in his own business of a similar nature. If a trustee employs an agent and the agent appropriates the property intrusted to him, the trustee will be held responsible: 1 Perry on Trusts, § 441. If money is deposited in the bank in such a manner that it is not under his

own exclusive control, as where money is deposited in a bank so that it cannot be drawn without the concurrence of another person, it is at the peril of the trustee and he is liable in case loss is occasioned thereby: 1 Perry on Trusts, § 443.

13, 14. When a trustee has secured the custody of the trust fund in cash, it is one of the most important of his duties to invest the same in such a manner that it will be safe and yield a reasonable rate of income to the *cestui que trust.*  If there are directions in the instrument of trust as to the time, manner, and kind of investment, the trustee must follow the direction and power so given him.  In the absence of such directions and powers, the trustee must be governed by the general rules of the court, or by the statutes and laws of the state in which the trust is to be executed.  In the absence of such directions he must be governed by sound discretion and *good faith.*  He must not have speculation in view but rather a permanent investment, considering both the probable income and the probable safety of the capital.

A trustee ought to invest in government or state securities, or other gilt-edged securities, or in bonds or mortgages on unencumbered real estate: 1 Perry on Trusts, § 452; *Roach's Estate,* 50 Or. 179, 197 (92 Pac. 118).  "There is one rule," says Mr. Perry in his work on Trusts, Volume 1, Section 453, "that is universally applicable to investments by trustees, and that rule is, that trustees cannot invest trust moneys in personal securities. * * There must be express authority in the instrument of trust to authorize a loan on personal promises."  In short, the law holds a trustee to a strict accountability and responsibility for a faithful performance of the duties of his trust.  He cannot shift his responsibility to other persons: 39 Cyc., p. 304.

15, 16. The will of Jacob Boehmer referred to the will of his late wife, Mary Boehmer, and so described it as to leave no doubt as to its identity, and adopted the provision therein with reference to the $5,000 trust fund. The provisions of both of these wills should be considered in relation to the trust fund: 40 Cyc. 1094; *Gerrish* v. *Gerrish,* 8 Or. 351 (34 Am. Rep. 585); *In re Willey's Estate,* 128 Cal. 1 (60 Pac. 471); *Dexter* v. *Harvard College,* 176 Mass. 192 (57 N. E. 371). Section 7347, L. O. L., commands that courts and others concerned in the execution of last wills shall have due regard to the directions of the will and the true interests and meaning of the testator in all matters brought before them. Where a testator's design can reasonably be ascertained it governs: *Shadden* v. *Hembree,* 17 Or. 14, 20 (18 Pac. 572); *Jasper* v. *Jasper,* 17 Or. 590, 593 (22 Pac. 152); *Portland Trust Co.* v. *Beatie,* 32 Or. 305, 309 (52 Pac. 89); *Kerr* v. *Duvall,* 62 Or. 470 (125 Pac. 830); *Kaser* v. *Kaser,* 68 Or. 153 (137 Pac. 187).

It is the contention of the defendants that as the plaintiff expressly approved of the disposition of the trust fund and he being *sui juris* is therefore estopped from questioning the same. In order for the beneficiary to be bound by his own consent or acquiescence the rule is stated in 1 Perry on Trusts, Section 467, thus:

"If trustees make an improper investment with the knowledge, assent, and acquiescence, or at the request of the *cestui que trust,* they cannot be held to make good the loss, if one happens; but the *cestuis que trust,* to be affected by such consent or acquiescence, must be *sui juris,* and capable of acting for themselves. * * *"

17. It is clearly shown by the facts and circumstances of this case that Robert Lee Boehmer is an unsophisticated country lad, incapable of properly transacting his

own business.   This is apparently the reason why provision was wisely made in the will of Mary Boehmer that he should not receive the bequest until he arrived at the age of thirty years.   The defendant, Silvestone, having accepted the trust and received the fund of $5,000 by virtue of an appointment by the court, should be required to account to the court, as such trustee.   It is shown that Silvestone, the trustee, and the defendant, Fouts, acted together in the matter and they were properly joined as defendants in this suit.

Counsel for plaintiff concede in their brief that the trustee is entitled to credit for all sums that have been received by the plaintiff out of the trust fund, or expended for his benefit and with his consent.   The trust fund of $5,000 should be credited with the following amounts paid to and on account of plaintiff Boehmer at his request:

November 17, 1914, check Fouts to Boehmer. .$1,843
November 17, 1914, expenses of bond of trustee............... ...... ...........   180
November 17, 1914, 3 premiums on life insurance policy...........................   240.25
November, 1914, paid J. Marsh to cancel note..   133
November, 1914, to Mrs. Kendricks for board, etc........... .................. ......   61.90
November, 1914, T. B. McDevitt to cancel debt...... ........ ...................   175
November 16, 1914, to July 10, 1915, several small checks to plaintiff................   265
December 16, 1915, Ed Dietrich..............   15
February 15, 1915, Shade one-third interest in patent........... ........ ..........   150
February 15, 1915, Mrs. Shade order of plaintiff........... ........ ..........   50

| | |
|---|---:|
| 1915, making model and other expenses of patent...... ........ ...................$ | 159.40 |
| Paid bad checks indorsed by plaintiff: | |
| January 10, 1916, L. H. Tarpley............ | 29.40 |
| February 5, 1916, N. E. Lewis............... | 15 |
| February 2, 1916, C. Nern.................. | 45 |
| 1916, Fred Hussman....................... | 20 |
| 1916, A. H. Brown......................... | 70 |
| February 14, 1916, paid Hutchman........... | 10 |
| Theodore Shade............................ | 5.75 |
| J. Silvestone, services as trustee............ | 100 |
| Fouts, attorney's fee...................... | 150 |

Total credits.................$3,717.70

Leaving a balance of..........$1,282.30

—which defendants should pay to the clerk of the Circuit Court for the plaintiff, to be subject to the order of that court.

18. We do not believe that the plaintiff understandingly agreed to pay an attorney fee of $1,000 in the matter of the fund or that in equity and good conscience he should be required to do so out of the trust fund. While there was no case in court, being only the appointment of a trustee, the plaintiff caused the attorney who acted for him considerable trouble in regard to the checks indorsed by him, and we think the amount allowed as attorney fees is a reasonable compensation for all of the legal services rendered plaintiff.

19. We do not find that the trustee acted willfully wrong in the matter and have therefore allowed for his services up to the time that nearly all of the fund was expended. Nothing should be allowed the trustee thereafter: See 39 Cyc. 480 et seq., and 2 Perry on Trusts, § 918, and notes.

The decree of the lower court will be reversed and one entered here in accordance with this opinion.

REVERSED.    DECREE RENDERED.
DECREE MODIFIED ON MOTION.    REHEARING DENIED.

BENNETT, J., and JOHNS, J., concur.

McBRIDE, C. J., dissents.

---

Allowed January 6, 1920.

MOTION TO MODIFY DECREE.

(186 Pac. 31.)

Motion of appellant to modify the decree.

ALLOWED.

*Mr. L. H. Tarpley* and *Mr. J. M. Haddock,* for the motion.

*Mr. Julius Silvestone* and *Mr. Seneca Fouts, contra.*

Department 2.

BEAN, J.—Our attention is called, by motion to modify the former opinion, to an item of $20 which by error was credited among the items allowed the defendants in the account, which should be corrected. Attention is also called to items allowed defendants therein as follows:

"Fred Hussman .......................$20
"A. H. Brown........................ 50"

—and that these two items had never been paid by defendant Fouts, and that there were some conditions attached to this defendant's agreement to pay the same for the plaintiff. Therefore these items will also be

deducted from the credits allowed defendants in the account, making a total of $90. The amount to be deposited in the Circuit Court by defendants will be increased in a like amount of $90, of which $50 should be paid to A. H. Brown and $20 to Fred Hussman, to cancel plaintiff's indebtedness to them upon a showing that the same has not been paid, and the obligation of defendant Fouts to pay the same annulled. In the event that it appears that said sums have been paid by defendant Fouts, then the same shall be credited or paid him for so liquidating the indebtedness of plaintiff.

The other matters to which our attention is directed by the motion were all fully considered at the time of rendering our former opinion.

With the modification above mentioned the former opinion is adhered to.

DECREE MODIFIED.    REHEARING DENIED.