EZEKIEL J. BROWNELL, trustee, *vs.* RHODA M. B. ANTHONY & others.

Bristol.    October 24, 1905. — November 27, 1905.

Present: KNOWLTON, C. J., LATHROP, LORING, BRALEY, & SHELDON, JJ.

*Trust.    Capital and Income.*

A dividend declared by a national bank, about to wind up its affairs and consolidate with two other banks by forming a new corporation, of $37.50 on each share of its capital stock of the par value of $100, as a step in liquidation for the purpose of enabling its stockholders to pay assessments on stock subscribed for by them in the new consolidated bank, is capital, and, if received by

a trustee holding shares of the bank for the benefit of a beneficiary for life
with a remainder to others, must be treated as part of the trust fund, and only
the income from it can be paid to the beneficiary for life.

BILL IN EQUITY, filed in the Probate Court for the county of
Bristol, on September 5, 1903, by the trustee under the will of
Richard Borden 2d, late of Fall River, for instructions as to the
proper disposition of a dividend of $37.50 per share declared on
May 15, 1903, and paid on July 1, 1903, on thirty-one shares of.
the capital stock of the National Union Bank of Fall River
of the par value of $100 each held by the plaintiff as such
trustee.

In the Probate Court *Fuller*, J. made a decree ordering that
the dividend be invested by the plaintiff as capital of the trust
fund in his hands and that only the income should be paid to
Rhoda M. B. Anthony, the beneficiary for life, the widow of
the testator, who had married since his death. Rhoda M. B.
Anthony appealed.

The case came on to be heard before *Braley*, J., who at the
request of the appellant reserved it upon the pleadings and an
agreed statement of facts for determination by this court.

Richard Borden 2d died on May 29, 1872. His will con-
tained the following provisions:

"First. I give and bequeath to my wife Rhoda M. Borden
the ——— also the income, earnings or dividends of forty-three
shares of the National Union Bank of Fall River, for and during
her natural life."

"Third. I give and bequeath to my sons, Hiram C. Borden,
Charles W. Borden and Nelson C. Borden, all the rest and
residue of my estate both real and personal, including that
portion the use and improvement of which I have given to my
said wife during her natural life, to be equally divided between
them share and share alike."

By a reorganization of the bank the forty-three shares of stock
thus disposed of became thirty-one. The facts in regard to the
declaration of the dividend are stated in the opinion.

*L. E. Wood & G. C. Hathaway*, for the defendant Rhoda M.
B. Anthony.

*N. Hatheway, Jr.*, for the other defendants.

No counsel appeared for the trustee.

KNOWLTON, C. J.   In the winter of 1903 the petitioner had in his possession thirty-one shares of the capital stock of the National Union Bank, a banking corporation organized under the laws of the United States.   These he held under a trust to pay the income to the respondent, Rhoda M. B. Anthony, for life, and after her death to turn over the remainder to the three sons of the testator by whose will the trust was created. In February, 1903, this bank, the Pocasset National Bank and the Massasoit National Bank took steps to consolidate the three banks, and form a new corporation, to be called the Massasoit-Pocasset National Bank.   In March, 1903, a committee of conference decided that the consolidation of the three banks was desirable, and a circular letter was issued to the stockholders of the National Union Bank, advising the adoption of their plan. The letter then proceeded as follows: " To do so it will be necessary to liquidate the old bank, using the assets to pay for stock in the new, making a cash dividend of surplus remaining. The stockholders of the National Union Bank will be entitled to the following option : New stock in the proportion of three new shares for each four of old and a dividend in addition as soon as possible in liquidation of probably $20.00 per share, or if new stock is not desired, the cash value in liquidation of about $135.00 per share, payable as soon as the assets can be collected." On May 15, 1903, in pursuance of this plan, the first dividend was declared by a vote as follows: " Voted, that a dividend of $37.50 per share be declared by this bank from profit and loss and surplus accounts, payable June 1, 1903, or at a date that may be agreed upon between the Pocasset National Bank, the Massasoit National Bank and this bank, said dividend being for the purpose of enabling stockholders to pay assessments on stock subscribed by them in the Massasoit-Pocasset Bank." Subsequently a vote was passed to liquidate the bank, and dividends were voted in liquidation.   Previously dividends had been declared to stockholders from the earnings of the bank, amounting for the last two or three years to five per cent per annum, and before that time to four and one-half per cent per annum.   On May 15, 1903, the bank had a surplus fund, and earnings in a profit and loss account, but the amount of earnings was not enough to enable it lawfully to declare this divi-

dend on that day, in the regular course of its business. U. S. Rev. Sts. §§ 5199, 5204. The question before us is whether the dividend of May 15, 1903, and the subsequent dividends in liquidation, all of which have been received by the trustee, are to be treated as income belonging to the beneficiary for life, or as capital to be held for those who take by way of remainder.

The principles applicable to this question were discussed at length in *D'Ooge* v. *Leeds*, 176 Mass. 558. See also *Hemenway* v. *Hemenway*, 181 Mass. 406 ; *Lyman* v. *Pratt*, 183 Mass. 58. In regard to investments in the capital stock of corporations, we find this language in the opinion, in the first of these cases : " Everything is made to turn upon the action of the corporation. ' A simple rule is, to regard cash dividends, however large, as income, and stock dividends, however made, as capital.' . . . The simple question in every case is whether the distribution made by the corporation is of money to be spent as income, or is of capital to be held as an investment in the corporation." This language was used of corporations continuing in existence, and retaining their capital for the purpose of exercising their corporate powers. Obviously it has no application to dividends of the assets, made in liquidation of a corporation which has been or is to be dissolved.

The dividends with which we are now dealing, that of May 15, as well as the later ones, were not made as a separation of income 'from capital, but as a part of the plan for winding up the affairs of the corporation. The stockholders were compelled to change their investment, either by taking the proceeds of the property of the old corporation in stock in the new corporation, with a small balance in cash, or by taking the entire proceeds turned into cash. In either case the proceeds were to be received as capital which they could use or reinvest as they chose. The vote of the dividend of May 15 was a step in the liquidation of the corporation, no less than the subsequent votes. Before the vote the surplus fund and the money represented by the profit and loss account, although derived from earnings, were held as a part of the capital. Only the previous dividends had been separated and made income by corporate action. The votes now in question were not intended to change the character of the property from capital to income, and they did not change

its character. We are of opinion that the petitioner should be instructed to treat all of these dividends as capital, of which the income only is to be paid to the beneficiary for life.

*Decree accordingly.*