[No. 23325. Department One. January 20, 1932.]

JAMES BOTHWELL, as Trustee, Plaintiff, v. EZRA ESTEP et al., Appellants, THE GIRLS CLUB OF SEATTLE et al., Respondents.[1]

[1]Reported in 6 P. (2d) 1108.

 

*Robert F. Sandall* and *George E. Mathieu,* for appellants.

*Reynolds, Ballinger, Hutson & Boldt,* for respondents.

BEELER, J.—Twenty-four thousand dollars came into the hands of James Bothwell, as trustee under the will of Jessie Estep, deceased, from the Cleveland Stone Company, of Cleveland, Ohio. Thereafter, he brought this action to have the court determine whether the twenty-four thousand dollars was income from the trust estate or a part of the corpus of the estate. The appellants, the life beneficiaries under the will, contended it was income, whereas the respondents, the remaindermen named in the will, maintained it was a part of the corpus and should be held intact for their ultimate benefit. The trial court held with the remaindermen, and entered a decree accordingly, and this appeal followed. The facts may be briefly summarized:

Jessie Estep died June 29, 1925, leaving a will in which the plaintiff James Bothwell was named as executor and trustee. The will by its terms provided that the residue of the estate, after payment of certain specific legacies and the costs of administration, should go to the executor as trustee, with instructions to keep the same invested in good income-bearing securities

and to divide the "whole of the net income" therefrom equally between Ezra Estep and Mary E. McClintock, brother and sister of the testatrix, and in the event of the death of the sister the entire net income should be paid to the brother, if still surviving, and in the event of his death, to his wife, if still surviving; and upon the death of these three beneficiaries, the corpus of the estate should be distributed among certain named remaindermen. Mary E. McClintock died during the lifetime of the testatrix.

At the time of her death, Jessie Estep was the owner of 240 shares of the capital stock of the Cleveland Stone Company, two hundred shares of which were acquired by her on April 13, 1910, and forty shares on April 1, 1912. At the time this stock was acquired, the Cleveland Stone Company owned all of the corporate stock of the Indiana Quarries Company, the latter company being a consolidation of two other companies, the Perry-Mathews-Buskirk Stone Company and the Bedford Quarries Company, separately acquired by the Cleveland Stone Company.

On March 28, 1926, the Cleveland Stone Company, with the consent of all its shareholders, sold all of the assets of the subsidiary company, the Indiana Quarries Company, for $4,700,000, of which $3,450,000 was paid in cash. This cash, together with the sum of $300,000 received by the Cleveland Stone Company from the sale of the property of another company owned by it, was placed on deposit in a special account with the Guaranty Trust Company of Cleveland, Ohio, and was never commingled with the general funds of the Cleveland Stone Company.

Thereafter, on June 26, 1926, the stockholders of the Cleveland Stone Company reorganized it by changing the character of its shares of capital stock from shares

of one hundred dollars par value to shares of non-par value, and authorized the exchange of each share of the original stock for one share of non-par value and the sum of one hundred dollars in cash, the cash coming from the special fund derived from the sale of the heretofore mentioned property. The executor and trustee of the estate of Jessie Estep surrendered the 240 shares owned by the estate and received in lieu thereof 240 shares of non-par value and a cash payment of twenty-four thousand dollars.

So the question is whether this cash payment should be treated as *income,* and therefore payable to the appellants as life beneficiaries, or as a part of the *corpus* of the estate, and therefore kept intact for the benefit of the respondents, the remaindermen. Or, putting the question in another form: Was the twenty-four thousand dollars paid to the trustee by reason of a *partial liquidation* of the capital assets of the Cleveland Stone Company, or as a *dividend* declared? If the latter, then the question arises: How shall the fund be distributed—shall it all be paid to the life beneficiaries, or all to the remaindermen, or shall it be distributed among them, and, if so, how shall the distribution be made?

In England, as far back as 1799, it was established as a rule that all extraordinary dividends declared during the continuation of a life estate, whether payable in cash or stock, belonged to the corpus of the estate, and not to the income. *Brander v. Brander,* 4 Ves. Jr. 800. In later years, that rule has been materially modified, and it is now held that dividends of cash belong to the life tenant, and stock dividends to the remaindermen, subject, perhaps, to an examination of the facts and circumstances in each case. *Bouch v. Sproule,* L. R. (12 App. Cas.) 385.

The American courts, in determining who is entitled to dividends declared upon stock held in trust as between life beneficiaries and remaindermen, invoke one of several rules, commonly referred to as the Massachusetts rule, the Pennsylvania rule, and the Kentucky rule. These rules are discussed at great length in elaborate notes to *Holbrook v. Holbrook* (74 N. H. 201, 66 Atl. 124), 12 L. R. A. (N. S.) 768.

It would be impossible to reconcile the many reported decisions, and difficult even to determine the weight of authority. Some of the courts hold that cash dividends, however large, must be regarded as income, while stock dividends, however made, must be regarded as capital. Others hold that ordinary dividends on stock held in trust belong to the person entitled to the income of the trust fund, but extraordinary dividends should be apportioned between the life estateman and the remainderman, in accordance with the amount thereof accumulated before and after the creation of the trust. Still other courts make no distinction between ordinary and extraordinary dividends, the *time* when the dividends are declared being the decisive criterion. *Earp's Appeal,* 28 Pa. St. 368; *In re Osborne,* 209 N. Y. 450, 103 N. E. 723, 50 L. R. A. (N. S.) 510, Ann. Cas. 1915A, 298; *Minot v. Paine et al.,* 99 Mass. 101, 96 Am. Dec. 705; *Hite v. Hite,* 93 Ky. 257, 19 L. R. A. 173, 40 Am. St. 189.

The cash distribution in this case was derived from a sale of a part of the capital assets of the Cleveland Stone Company, assets which were income-producing, and from which the company, in part at least, derived the funds from which its dividends were paid, and its partial liquidation lessened, *pro tanto,* the value of the shares of its capital stock. While the form of the corpus of the estate was changed by the transaction,

which resulted in the payment of the twenty-four thousand dollars in question, the substance was not. The 240 shares of the original stock of the Cleveland Stone Company and the 240 shares of non-par value in the same company, with the cash payment of twenty-four thousand dollars added thereto, represented, in legal effect, the same thing—the capital of the trust fund. All the authorities agree that the capital assets of a corporation in liquidation, or partial liquidation, in whose shares trust funds are invested, cannot be distributed among the life beneficiaries, but belong to the corpus of the estate.

"The courts are substantially agreed that a dividend, so-called, whatever its form, which is not declared from earnings past or current, but which represents a reduction or change of form of capital, or a mere enhancement of the value of assets representing capital from sources other than the accumulation of earnings, belongs to the corpus, and not to the income." Note p. 803, *Holbrook v. Holbrook,* 74 N. H. 201, 66 Atl. 124, 12 L. R. A. (N. S.) 768.

In *Vinton's Appeal,* 99 Pa. St. 434, 44 Am. Rep. 116, the court said:

"It is thus manifest that the money in dispute comes, not from the annual earnings of the company, but from a sale of part of its property; part of that very corpus which the stock shares represent, and without which those shares have neither substance nor value."

Again, in *Bulkeley v. Worthington Ecclesiastical Society,* 78 Conn. 526, 63 Atl. 351, 12 L. R. A. (N. S.) 785, the court said:

"Judged by this test the votes of the directors, pursuant to which the cash in question was paid to Raymond, were in no true sense declarations of cash dividends within the meaning and intent of the rule. They were not passed by the directors in the exercise of their discretionary powers in determining what of the cor-

porate assets representing surplus should be separated and withdrawn from the body of them to be retained for future corporate use, and thus separated, go out to shareowners as income freed from all claim of the corporation thereon. There was no purpose on the part of the directors to make a division of profits, as such, among the owners of shares which were to continue to exist. The company was engaged in liquidating its business and distributing all its assets to its stockholders. The end sought was the return to the owners of stock of all that the company owned, and its distribution to them in exchange or substitution for the shares which thereafter were to cease to exist. The directors were called upon to exercise no discretion. They had but a single duty, and that was to distribute everything in their hands, and they performed that duty as to cash and stocks in like manner.''

Also, in *Wilberding v. Miller,* 90 Ohio St. 28, 106 N. E. 665, L. R. A. 1916A 718, the court said:

''The distributive share of the assets of a corporation received by trustees on the liquidation and dissolution of the company belongs to the trust fund, although the assets so distributed included a surplus which the company had accumulated from its earnings and had invested, used and held in the promotion of its business, acting in good faith and for the best interest of all concerned.'' (Syllabus.)

See, also, 7 R. C. L. 291, and 17 R. C. L. 630-32.

If the corporation, with the consent of all of its stockholders, had sold all of its capital assets and distributed the money derived from such sale, *pro rata,* to the holders of its stock, no one could seriously contend that the money so distributed was either an ordinary or extraordinary dividend.

The facts in this case show that the twenty-four thousand dollars in question was not derived from either an ordinary or an extraordinary cash dividend, but was derived from a partial liquidation of the cap-

ital assets of the Cleveland Stone Company, and, therefore, represented an integral part of the corpus of the trust estate. This conclusion makes it unnecessary, in this case, that we apply any one of the several rules referred to in the early part of this opinion.

But it is strenuously argued by appellants' learned counsel that the Cleveland Stone Company used its accumulated earnings to acquire the capital stock of the subsidiary companies, and, consequently, when it sold these companies, the purchase price received again assumed the character of accumulated earnings, available for the purpose of declaring ordinary dividends.

With this reasoning, we can not agree. Directors, acting in good faith, may retain a portion, or all, of the earnings of the corporation which they control, and thereby accumulate a surplus to be invested and used in enlarging or expanding the corporate business, and, when so invested, the surplus becomes an integral part of the capital assets of the corporation. The authorities agree that capital assets of a corporation, in liquidation or partial liquidation, are capital and not income, and, on distribution being made by the corporation, the assets belong to the corpus of a trust estate holding shares of stock therein. *Rhode Island Hospital Trust Co. v. Peckham,* 42 R. I. 365, 107 Atl. 209; *Rhode Island Hospital Trust Co. v. Bradley,* 41 R. I. 174, 103 Atl. 486; *Curtis v. Osborn,* 79 Conn. 555, 65 Atl. 968; *Brownell v. Anthony,* 189 Mass. 442, 75 N. E. 746; *Bishop v. Bishop,* 81 Conn. 509, 71 Atl. 583; *Jackson v. Maddox,* 136 Ga. 31, 70 S. E. 865, Ann. Cas. 1912B, 1216.

Mrs. Estep, the testatrix, used the word "income" in her will creating the trust. Had she desired to give to the life beneficiaries something in addition to in-

come, as that word is ordinarily understood, she would have expressed her wishes in detail. She must be presumed to have been familiar with, and had in mind, the ordinary use and meaning of the word "income." By holding that the two hundred and forty shares of non-par stock and the twenty-four thousand dollar cash distribution was capital, and not income, the trust fund remains as the testatrix knew those assets at the time of her demise. To decide otherwise would enrich the life beneficiaries at the expense of the trust fund.

The judgment is affirmed.

Tolman, C. J., Mitchell, and Parker, JJ., concur.

Herman, J. (dissenting)—I dissent. The evidence showed that the Cleveland Stone Company was incorporated under the laws of Ohio. In the absence of proof of the laws of that state, it must be presumed that the laws of Ohio are the same as the laws of Washington.

" 'The rule of law that requires corporations to preserve their capital intact is alone sufficient to prevent the corporation from paying dividends except out of profits.' 5 Thompson, Corporations (2d ed.), § 5305." *Jorguson v. Apex Gold Mines Co.*, 74 Wash. 243, 133 Pac. 465, 46 L. R. A. (N. S.) 637.

The law presumes that the directors did not fraudulently impair the rights of creditors and pay cash out of the capital. No fraud was pleaded or proved.

The estate of Jessie Estep, deceased, owned two hundred forty shares of stock in the Cleveland Stone Company, the decedent having acquired two hundred shares on April 13, 1910, and forty shares on April 1, 1912; the par value of each share of stock being one hundred dollars. The Cleveland Stone Company owned all of the three thousand shares of stock in the Indiana Quarries Company. Before and at all times since the

acquisition of the Indiana Quarries Company stock, the Cleveland Stone Company has been conducting business, and, after the sale of the Indiana Quarries Company properties, the Cleveland Stone Company retained all its physical properties and had assets of $3,600,000, other than the proceeds from the sale of the Indiana Quarries.

In 1926, the assets of the Indiana Quarries Company were sold for a consideration of $4,700,000, after that corporation had, during the previous six years, earned as profits $3,390,000, which had not been distributed. Had the investment of the Cleveland Stone Company in Indiana Quarries Company represented a loss, the life income of appellants from Cleveland Stone Company stock would have suffered. Now that the investment represents such a profitable undertaking for the Cleveland Stone Company, in my opinion the life tenant is entitled to the benefit of the profitable sale of the assets of Indiana Quarries Company, which profitable sale was largely due to the accumulation and withholding of profits totaling almost three-fourths of the sale price within six years prior to the date of the sale. In my opinion, the twenty-four thousand dollars realized by the trustee was a cash dividend, and should be treated as income of the life tenant.

On Rehearing.

[*En Banc.* July 8, 1932.]

Per Curiam.—Upon a rehearing *En Banc*, a majority of the court adheres to the Departmental opinion heretofore filed herein. The judgment is therefore affirmed.