IN RE TRUST UNDER WILL OF GEORGE S. KOFFEND.
REGINA L. GRIFFIN AND ANOTHER v. FIRST NATIONAL
BANK OF MINNEAPOLIS AND OTHERS.[1]

No. 33,737.

July 28, 1944.

[1]Reported in 15 N. W. (2d) 590.

*Dorsey, Colman, Barker, Scott & Barber, Leavitt R. Barker,* and *John W. Windhorst,* for appellants.

*H. Van Valkenburg & Blaisdell,* for respondents.

PETERSON, JUSTICE.

This appeal brings here for review an order denying an alternative motion for amended findings or a new trial after the trial court overruled objections interposed by the successor trustee and certain remaindermen to the account filed by the executrices of the first trustee of the trust created under the will of decedent.

The questions involved relate to what constituted income, profits, and net earnings of his estate given by testator to his widow and to the rules by which the amount thereof shall be determined.

The decedent, George S. Koffend, died testate on October 19, 1936. At the time he was 73 years old. His wife, Mae C. Koffend, then 70 years of age, was his only immediate survivor. They had no children. She was somewhat incapacitated physically by a hip injury. She was an intelligent woman of limited business experience. Testator had a sister, numerous nieces and nephews, and grand-nieces and nephews. His wife had a nephew.

At the time his will and codicil were executed and of his death, the testator owned all the stock of the Venus Manufacturing Company, consisting of 500 shares, five of which were in the names of the directors to qualify them as such; a 20-percent interest in the Koffend Petroleum Company, a joint enterprise between him and the corporation for owning and operating certain oil wells; an 80-percent interest in George S. Koffend & Company, a similar venture between him and one Katherine Kitz for the same purpose; a joint bank account with his wife; and other property, including household goods, personal effects, and certain oil-well interests.

The will, dated July 20, 1936, provides for the appointment of testator's wife as executrix and as trustee of the trust created thereunder. It gave her, if living at the time of his death, all his household furniture and furnishings, wearing apparel, jewelry, ornaments, and other personal effects of like nature. It directed her to pay "out of cash in bank and life insurance then to be in my estate" his just debts, the expenses of his last illness, funeral, and administration of his estate, and the inheritance taxes on all legacies, bequests, and devises.

He gave the entire residue of his estate to his wife in trust, to be used, managed, and cared for as therein provided and not otherwise. He directed her, for a consideration of one dollar, to assign and transfer his property, other than the stock in the corporation owned by him at the time of his death, to the corporation to be its "absolute property."

The will further provides that during her lifetime the wife, as executrix and trustee, *shall vote* the stock of the corporation for a board of directors composed of the wife, Thomas P. Griffin, Joseph Koffend, William Roemer, and Jesse Van Valkenburg. In case of the death of any of them or their inability or refusal to act, it was provided that "the place" of anyone failing to act shall be filled by the remaining members of the board "acting as directors of said corporation." It further provided that after his death the business of the corporation "will be a holding company and will consist principally of the collection of moneys due, both principal and interest, and the investment of the same."

In his will the testator made six *requests* of the board of directors acting as such during his wife's lifetime, *viz.:* (1) to elect as officers of the corporation his wife as president and treasurer, Thomas P. Griffin as secretary, Joseph Koffend as vice-president, William Roemer as vice-president, and Jesse Van Valkenburg as vice-president; (2) to retain any investments which testator might leave at the time of his death unless and until the board shall find evidence of permanent depreciation therein and shall have determined it to be for the best interests of the estate to sell; (3) to make investments only in securities of specified listings and ratings; (4) to vote as an annual salary for the wife the sum of $3,600 per year, payable monthly, for her services as an officer of the corporation, "provided the assets of the corporation will permit"; (5) to vote from time to time "from the surplus of said corporation or earnings thereof, such additional sums for her support and care as they shall deem proper and necessary" in the event of any accident, illness, or other emergency making the salary insufficient, in the opinion of the board, for her support and care; and (6) to keep the funds of the corporation in a checking account in the First Minneapolis Trust Company of Minneapolis, Minnesota.

The testator requested that upon his wife's death the First Minneapolis Trust Company (now First National Bank of Minneapolis) "be designated" as successor trustee. He directed it as successor trustee to pay to his sister, eight named nieces and nephews, and

a nephew of his wife during their respective lives each one-tenth "of the annual net income, from my interest in Venus Manufacturing Company." Provision was made to the effect that in case of the death of any of these successor life tenants his or her share should revert to and become a part of the trust, except his sister's share, which upon her death he gave to Regina L. Griffin during her life. Upon the death of the last surviving life tenant, the will provided that "the trust estate then remaining in the hands of my said trustee" shall be distributed as follows: 75 percent thereof to the male heirs at law and 25 percent thereof to the female heirs of his nephew Joseph Koffend, the members of each group to share and share alike; that upon such distribution the trust shall terminate; that the five qualifying shares of stock of the corporation shall be assigned to it for a consideration of one dollar and that the corporation shall be liquidated.

The will also expressed the wishes, first, that the executrix and trustees shall not commit "said estate" to any money obligation, except as in the will stated; that his estate shall be kept free from debt, and all payments to the "heirs and beneficiaries" shall be made as promptly as possible; and, second, that his wife as executrix and trustee shall invest only in quick and liquid securities of specified listing and rating.

The will was prepared by testator's lawyer pursuant to instructions. After testator had read it and before he signed it, he discussed its provisions with the lawyer. That was during the noon hour. As a result of the discussion, the lawyer prepared a codicil, which testator signed during the afternoon of the same day, directing his wife, as trustee, to pay to herself annually "all net earnings to be received by her as such trustee from the said stock in Venus Manufacturing Company," *provided* the board of directors of the corporation might in their discretion create a surplus fund in which might be placed not to exceed ten percent *of its yearly earnings.*

The will and codicil were admitted to probate in Minnesota. The widow took under the same. She was appointed executrix under

the will and trustee of the trust created thereunder. Ancillary administration was had in California, where an administrator c. t. a. was appointed.

There was no life insurance. The cash in the estate at the time of testator's death was $12,473.01. The debts, expenses of the funeral and administration, and inheritance taxes in Minnesota and California amounted to $26,201.64. These could not be paid out of the funds mentioned in the will as available for the purpose, because testator had no insurance payable to the estate, and there was in his estate only the $12,473.01 in cash mentioned. The items to be paid exceeded the available cash by $13,728.63. The amended final account showed that the executrix expended $14,492.19, consisting of $7,964.02 for funeral expenses, claims and expenses of administration (which was incorrectly shown in the account as $7,383.75), and $6,728.17 for taxes. It was also stipulated that a corrected final account would show that the executrix received as income $583.40 as a dividend on the stock owned by testator in the Square Clothing Company.

After the amended final account had been allowed but before the final decree of distribution was entered, the executrix received $59,415.24 from the representative of the estate in California, for which she gave a receipt. This consisted of various interests of the testator in oil-well companies, contracts and properties, and a promissory note secured by a chattel mortgage. This property received from the California administrator was not mentioned in the final decree of distribution, entered about two weeks later, which assigned the residue to the trustee to be held in trust for the purposes and uses stated in the will. It is undisputed that this property was part of the residue and was assigned as a part thereof by the final decree under the rule of Baumann v. Katzenmeyer, 204 Minn. 240, 283 N. W. 242, 120 A. L. R. 627.

The executrix paid expenses of the estate in connection with the probate out of her personal funds, for which she was not reimbursed, in the sum of $780.30. This item was not included in the final or amended final account and was not allowed by the probate

court. She transferred to the corporation all property and the income coming into her hands as executrix. For accounting purposes, the parties adopted April 30, 1938, as the date of the termination of the probates.

The income received during probate, except for the stock dividend received in Minnesota, was derived almost entirely from oil-well operations in which testator had interests. No dividends were paid by the corporation, except in 1939, when a dividend of $1,500 ($3 per share) was declared, which was paid to the widow as trustee and which she, as trustee, paid to herself individually. In November 1936, shortly after testator's death, the directors of the corporation voted the widow a salary of $3,600 per year payable in monthly installments of $300. The widow received during the time she was executrix and trustee the salary and the dividend mentioned. The other income received by the corporation was not distributed, but was carried in its surplus capital account.

Mrs. Koffend died testate on March 8, 1940. Her will was admitted to probate, and Regina L. Griffin and Emma L. Gebhardt were appointed executrices of her will. As such executrices, they rendered the first and final account of Mrs. Koffend's trusteeship. In the account they claimed the entire net income received by the Venus corporation from the property of the testator. The First National Bank of Minneapolis, as successor trustee, and certain remaindermen filed objections to the account. Summarized, these objections as developed by the evidence are: (1) that the income received by the corporation from testator's property transferred to it belonged to it and not to the widow as the beneficiary of the trust; (2) that under the will she was entitled only to dividends regularly declared by the corporation; and (3) that, if she was entitled to the income received by the corporation from such property, it did not include income received by her or it during the probates, and it was subject to deductions for the payment of funeral expenses, debts, expenses of administration and taxes, and for depletion of the oil-well properties. They claim that $16,-700.67 set aside for depletion reserves was not income, but re-

placement of capital under rules claimed to be applicable for the apportionment of income between life tenant and remainderman.

Apparently the trial court was of the view that the will and codicil disclosed a testamentary intention to give the widow the entire income from testator's estate transferred to the corporation, but that the matter was left in ambiguity by the unusual provisions of the will. In order to resolve the ambiguity, the court received evidence relating to the circumstances surrounding the execution of the will and codicil and the declarations of the testator to the attorney who drew the will concerning his purposes. The evidence shows that testator dominated and controlled the corporation. He used it as an agency for the transaction of his private business in disregard of the rules applicable to transaction of corporate business. He made it his partner in a venture to purchase and operate oil wells in California under the name of Koffend Petroleum Company. He dealt with its property and assets in numerous instances as if he, not the corporation, were the sole owner of the business.

The evidence further showed that testator intended to leave for California on the evening of the day the will and codicil were executed; that he wanted to make sure that his wife got *all* the income from his estate; and that he did not want her to have the power to dispose of the corpus. The attorney testified:

"He said to me, after he had read the will, he said it was the way he wanted it, except he was uncertain about one point. He said he wanted his wife to receive all the earnings of the estate, and he wanted to know whether the will, as it was written then, covered that. I told him if he had any doubt on it, we could remedy it by drawing the will over, and I suggested we make the correction. He said he was in a big hurry, that he was going to leave that night, and didn't want to take the time, and I think I suggested—either he or I—that a codicil be drawn covering the point he raised. Following that, the will was signed by him and by the witnesses.

\* \* \* \* \*

"* * * There was some conversation about why he made the will the way he did.

"Q. Would you give us that conversation?

"A. Well, he repeated this several times—he said his wife was a. strongly religious woman, and he didn't want to will the property to her outright, because he was afraid she would make contributions more than she should, more than he thought she should; besides, she was lame, a cripple, and quite a feeble woman, and he wanted her to be protected. He said that many times,. he wanted her to have everything she needed.

"Q. In conversation, with reference to the will or the codicil, was there any conversation or instruction from Mr. Koffend as to when Mrs. Koffend was to receive the income, as from what dates?

"A. Yes, from the time of his death, and as long as she lived."

The evidence showed that in some respects, at least, the corporation construed the transfers to it as being testamentary in nature, because at the meeting of the board of directors held on November 18, 1936—just a day less than a month after testator's death—in considering the investment of moneys of the corporation, a resolution was adopted appointing a committee of the board "with full powers to invest said sum, *provided such investment be made in accordance with the provisions of the Will of George S. Koffend, Deceased.*" (Italics supplied.) On the other hand, the corporation failed to pay over to the widow the income earned. Its directors held numerous meetings. They voted her the salary and the dividend which have been mentioned. The income was held as part of its capital surplus account. So far as appears, the widow did not object. Income had been accumulated during her lifetime totalling almost $50,000, but no declaration of dividend or payment to the widow, other than the one mentioned, was made.

After Mrs. Koffend's death, the corporation, pursuant to a resolution of its board of directors, paid $2,000 to William J. Roemer and Joseph Koffend, Jr. as additional compensation for their services *as officers of the company* from October 19, 1936, to March 31,

1940. This amount the objectors claim should be deducted from the net income, but the court disallowed the claim.

The court concluded that testator did not intend to make the corporation a beneficiary of his estate; that he employed it to effectuate his testamentary purposes; that he intended to give his wife the entire income from his estate from the date of his death; and that the income included the net income of the property given in trust and by the trustee transferred to the corporation from the date of his death without any deduction for depletion of the oil wells. It also awarded the wife the $780.30 paid for expenses of the estate. The total amount allowed to her was $49,739.33, with interest at three percent from March 8, 1940 (the date of her death).

We shall state and consider seriatim the points raised by the objectors as appellants without stopping to enumerate them.

■ The most difficult question is that relating to testamentary intention. It seems reasonably clear from the will itself that testator did not intend that his widow should have the corpus of the estate. This he placed beyond her ownership and control by the provision that, upon the transfer by her to the corporation, it was to be its "absolute property." Apparently neither the widow nor anyone else claimed otherwise. But the disposition of income is not so clear. There is the provision requesting the directors to vote her an annual salary of $3,600 per year, followed by another provision, in case "the *income* and *salary* hereinbefore provided" (italics supplied) shall prove insufficient, to vote her certain allowances. There was a prior provision for a salary, but none for any other income. Testator may have used the words *income* and *salary* as synonymous, thereby rendering one of them superfluous, and then again he may have used them, as he presumably did, as referring to separate things. If the latter, he definitely failed to provide in his will for the *income* mentioned, unless the income from the property transferred be so considered.

It is clear that, although testator intended that the corporation should become the owner of the corpus, such ownership was only

for the purpose of accomplishing his testamentary purposes, and that he intended to use the corporation as an agency or vehicle to such ends. The first step was to strip the corporation of all powers possessed by it as a manufacturing company and to convert it into one to invest money and collect income. Its powers were to be no different from those of a natural person appointed as an agent for the same purposes. Testator drew a distinction between the powers to be exercised by the directors as such and those to be exercised otherwise, because he directed them *to act as directors* of the corporation in the single instance of filling vacancies in the membership of the board if any director named in the will was unable or refused to act, and in all other matters he directed them in the performance of their duties as one would any ordinary trustee. Finally, upon the death of the last of the second group of life tenants, he provided for the liquidation of the corporation and distribution of its assets as the final distribution of his "said trust estate." It is manifest that the testator treated the property transferred to the corporation as his estate rather than the corporation's and the corporation and directors as his agents to accomplish his testamentary purposes.

The provision relating to paying the widow a salary was not to be exclusive of other payments and a limitation thereon, but was an authorization to pay it in any event, provided only the corporation's *assets* permitted. The fact that the payment was to be made out of corporate assets shows that it was not to be made out of income from the property transferred, and, if she was to have the income, the salary was cumulative. The same is true of the additional allowances payable out of *surplus* contingent upon the "income and salary" being insufficient. The plain inference is that income was not available for payment of her salary as a corporate officer, because salaries of corporate officers were payable out of corporate income, and the income from the property transferred was given to her as the beneficiary of the trust.

Against this backdrop, the codicil acquires more than ordinary significance. It is apparent therefrom that testator thought he

had not made it sufficiently clear that he intended his wife to have *all* the net earnings "from the said stock" in the corporation, and that he also thought that by giving her the net earnings from the stock he was giving her *all* the net income of his estate transferred to the corporation, because he added a proviso limiting such disposition by authorizing the board of directors, in its discretion, to create a surplus fund in which might be placed not to exceed ten percent of the *yearly earnings of the corporation*. In speaking of *yearly earnings of the corporation*, he did not refer to dividends. Plainly, he meant its net income. What else could he have meant? Otherwise, the provision is meaningless, because a corporation cannot create a surplus out of dividends declared. And, since this is true, he meant to give his wife the earnings and not such dividends as might be declared. The ambiguity, if any, as to such intention was removed by the evidence relating to the circumstances surrounding the execution of the will and codicil and his directions to the lawyer who drew the will and codicil. No point is made here that the lawyer's testimony was not admissible.

The probability is that testator preferred his wife to his remote relatives. She was the person closest to him. He manifested great concern that she be amply provided for. He owed her such a duty. There is nothing shown concerning his relationship with the remote relatives to suggest that they should be the particular objects of his bounty. So far as appears, he gave them the remainder simply because they were relatives; there was no one else to give it to.

Consequently, we sustain the trial court's findings that testator did not intend that the corporation should be a beneficiary under his will; that he used the corporation as a mechanism or instrumentality in the trust structure to aid in executing his testamentary plan; and that he intended to give his wife the entire net income of the corporation from his estate, and not merely such corporate dividends as it might declare.

■ The objectors contend that testator could not by will *direct* the directors to vote for and declare specified dividends. The objectors' contention involves a denial of the validity of the use of

the corporation as an integral part of testator's testamentary scheme. The objectors are not entitled to question the validity of the will under which they take. By accepting the trust and undertaking to execute the duties devolving upon it as trustee, the successor trustee is estopped from denying the validity of the provisions of the will under which the trust was created. McMicken v. Perin, 59 U. S. (How.) 507, 15 L. ed. 504; England v. Winslow, 196 Cal. 260, 237 P. 542; Guilfoil v. Arthur, 158 Ill. 600, 41 N. E. 1009; Grand Lodge v. Beath, 150 Mich. 657, 114 N. W. 662; Cowin v. Hurst, 124 Mich. 545, 83 N. W. 274, 83 A. S. R. 344; Boehmer v. Silvestone, 95 Or. 154, 174 P. 1176, 186 P. 26 (successor trustee). By taking under the will, the remaindermen are estopped to deny the validity of its provisions. Pickett v. Merchants' Nat. Bank, 32 Ark. 346; Frierson v. Branch, 30 Ark. 453; Jourdan v. Andrews, 258 Pa. 347, 102 A. 33; Boehmer v. Silvestone, 95 Or. 154, 174 P. 1176, 186 P. 26, *supra*.

A corporation may be used as an agency to effectuate testamentary intention. Watkins v. Bigelow, 93 Minn. 210, 100 N. W. 1104. The determination of questions involving testamentary dispositions of corporate dividends depends primarily on the laws of testacy and trusts rather than upon those relating to corporate right and power. The testamentary intention will be given effect if that can be done legally. In re Trusts Under Will of Whitacre, 208 Minn. 286, 293 N. W. 784. "The corporation is a mere vehicle for administration. The rule for decision is to be found in the underlying instrument—the will of deceased." Matter of Estate of De Constantinovitch, 157 Misc. 328, 329, 283 N. Y. S. 270, 272. A corporation, the same as an individual, accepts a transfer of property subject to all charges and conditions of the transfer. Watkins v. Bigelow, *supra*. The conditions here that the corporation pay the entire net income as dividends to the widow for life with remainder over were *ultra vires* the corporation. But that is no reason why it should not perform. The case comes within the rule that a party who has fully performed his part of an *ultra vires* contract with a corporation, which is not forbidden by statute or contrary to

public policy, may compel it to perform on its part. Benson Lbr.
Co. v. Thornton, 185 Minn. 230, 240 N. W. 651, 81 A. L. R. 981.
Before the corporation will be allowed to disaffirm upon the grounds
that performance involves *ultra vires* acts on its part, common
honesty requires that it disgorge what it has received to the right-
ful owners. It cannot at one and the same time refuse to perform
upon the grounds of *ultra vires* and keep what it has received.
Equitable Holding Co. v. Equitable B. & L. Assn. 202 Minn. 529,
279 N. W. 736. Here, the testator, during his lifetime, and his
widow, as trustee, during hers, were the owners of all the stock of
the corporation. No rights of the other stockholders are involved;
nor is any corporate right of the objectors. Where, as here, a cor-
poration is obligated to pay profits "as dividends," it will be re-
garded as a mere agency for the purpose of discharging the obliga-
tion. Conover v. Smith, 83 Cal. App. 227, 256 P. 835; 11 Fletcher,
Cyc. Corp. (Perm. ed.) § 5321, note 44. Cases cited by objectors
such as In re Trust Under Will of Clarke, 204 Minn. 574, 284 N. W.
876; Schmitt v. Eagle Roller Mill Co. 199 Minn. 382, 272 N. W.
277; Green v. Philadelphia Inquirer Co. 329 Pa. 169, 196 A. 32;
and Boyle v. John Boyle & Co. Inc. 136 App. Div. 367, 120 N. Y. S.
1048 (affirmed, 200 N. Y. 597, 94 N. E. 1092), are not in point, for
the reason, if not for others, that in none of them was there, as
here, a transfer to the corporation of property the net income from
which was payable as dividends to a designated beneficiary.

■ The court had the power to direct the successor trustee to
vote for directors of the corporation who would vote the dividends
to which the executrices of the widow are entitled. The right to
the dividends was clearly established. It was not necessary that
the executrices bring an action to recover them. The trustee of
all the outstanding stock was before the court. It had the power
to act directly upon the corporation through its stock control. A
court of equity may specifically direct a trustee to exercise a power
which was given him where such action is necessary to give a
*cestui* a remedy. Congdon v. Congdon, 160 Minn. 343, 200 N. W.
76; 3 Bogert, Trusts and Trustees, § 558. It should do so where

a specific direction will avoid a multiplicity of suits. 65 C. J., Trusts, § 539. Why should the executrices be put to another suit when a complete, direct, and speedy remedy can be afforded them without additional expense by the simple expedient of directing the trustee to exercise its right of control so that the net income will be paid? Where there is reason to apprehend a multiplicity of suits, the court may require the trustee to exercise his powers "under the view of the Court." Costabadie v. Costabadie, 6 Hare 410, 414, 16 L. J. Ch. 259, 261, 67 Eng. Reprint 1225.

■ The will gave the widow the net income from the date of testator's death. That date must be taken because no other was fixed. Absent expression of a contrary intention, the beneficiary of the income from a fund or property bequeathed or devised in trust is entitled to it from the date of the testator's death. Poole v. Union Trust Co. 191 Mich. 162, 157 N. W. 430, Ann. Cas. 1918E, 622; Will of Leitsch, 185 Wis. 257, 201 N. W. 284, 37 A. L. R. 547; 69 C. J., Wills, § 1887. The final decree of distribution assigned the residue of testator's estate in the hands of the executrix to the trustee. The residue included the income received by the executrix as well as the corpus. It did not adjudicate, as there was no occasion for doing so, what constituted corpus and what income. Objectors contend that the decree, for lack of a provision determining what was income, operates as an adjudication that the entire residue was corpus. There is no more reason for holding that the decree determined that it was all corpus than that it was all income. Where, as here, the beneficiary is entitled to income from the date of death of the testator, income accruing after his death and paid to the executor and by him paid over to the trustee remains income, and the trustee must pay it to the beneficiary as the party entitled to it. Bradford v. Fidelity Trust Co. 12 Del. Ch. 56, 104 A. 777; Old Colony Trust Co. v. Forsyth Dental Infirmary, 271 Mass. 511, 171 N. E. 734, 70 A. L. R. 633, and annotation; Dickinson v. Henderson, 122 Mich. 583, 81 N. W. 583, 5 Prob. Rep. Ann. 359; Loring, A Trustee's Handbook (4 ed.) p. 223.

In Equitable Guarantee and Trust Co. v. McCurdy, 11 Del. Ch. 156, 98 A. 220, the court held that the beneficiary is *clearly entitled* to the income from specific securities held by the testator accruing after death which came into the hands of the trustee as part of the residuary estate.

In Old Colony Trust Co. v. Smith, 266 Mass. 500, 501, 165 N. E. 657, 658, the court quotes Mr. Chief Justice Shaw in Minot v. Amory, 2 Cush. (Mass.) 377, 386, to the effect that trustees should credit to income "all sums received as income, either through the executors or by themselves." The income received by the executrix belonged to the beneficiary even though it was assigned as part of the residue. Our decision in the case of In re Trust Created Under Will of Fogg, 193 Minn. 397, 259 N. W. 6, is not contra, because in that case, unlike the instant one, there was a direction in the will to the executor to pay certain income to certain life tenants, with the consequence that the final accounting and decree involved a determination whether income had been separated from corpus. Consequently, the decree there was *res judicata* that only corpus was assigned. Here, the duty of making the separation was upon the trustee, and the executrix had nothing to do with it except to receive it and pay it over to the trustee.

■ It is claimed also that a corporate dividend of $5,023.22 for 1936 declared and paid in 1937 should be apportioned as between the widow and the remaindermen upon a proportionate time basis so as to give to her all income represented by the period subsequent to the testator's death on October 19 and to them all income prior to that date. The rule is that as between life tenant and remainderman dividends will be treated as income or corpus, depending upon whether they were earned or accrued before or after the life estate arose. Goodwin v. McGaughey, 108 Minn. 248, 122 N. W. 6. Where, as here, the evidence does not show what portion, if any, was earned before the life estate arose, the dividend will be treated as income payable to the party entitled to the income at the date of its declaration. Pardee's Estate, 343 Pa. 79, 21 A. (2d) 904; 33 Am. Jur., Life Estates, Remainders, etc. § 396, note 1.

■ In September 1936 (less than a month before testator's death), Koffend Petroleum Company, by a sale and exchange of certain oil-well interests, received not only enough to repay the amount the corporation had invested in the venture but also to realize a net profit of $12,517.42. If divided according to their proportionate interests in the petroleum company, the corporation was entitled to $10,013.77 and the testator's executrix $2,503.65. It was stipulated that the profit was a *capital gain*. The executrices claimed the $10,013.77 as income belonging to the widow. Just what right she had to it is not clear. The objectors resisted the claim upon the ground that the profit was a capital gain of the corporation and could not in any view be considered as income. That contention must be sustained.

Ordinarily, gains in value of investments represent an increase of capital and are to be credited to principal rather than income. Where a corporation obtains a gain by the sale of stocks of a subsidiary, the gain is an increase of capital and not income. Likewise, where a trustee is required by the terms of the trust to pay income from corporate stock to a life tenant with remainder over, the gain belongs to the remainderman as an increase of principal and not to the life tenant as income. Bothwell v. Estep, 166 Wash. 420, 6 P. (2d) 1108, 12 P. (2d) 1119; 33 Am. Jur., Life Estates, Remainders, etc. §§ 335, 336. In the cited case and text, the sale of stock of a subsidiary corporation was considered. Here, there was a sale of assets of a partnership in which the corporation had an investment. The distinction is one without substance. The same principle applies in both situations, because the important and controlling fact is that there was a gain of capital by the corporation resulting from the sale of its assets. Consequently, the $10,013.77 was not income, and the widow was not entitled to it as such.

■ In 1937, the corporation sustained a loss of $3,700 by the sale of stock it owned in a corporation known as "Sports Afield." The trial court held that this was a capital loss and not chargeable to income. For the same reason that a gain from a sale of corporation assets represents an increase of capital, a loss from such

a sale represents a depreciation thereof. The direction in the will to pay the net income to the widow shows an intention on the part of the testator to have the remaindermen bear all depreciation in investments. Codman v. Commr. of Int. Rev. (1 Cir.) 50 F. (2d) 763; 65 C. J., Trusts, § 705.

■ The corporation set up a depletion reserve of $16,700.67 out of income to replace the capital invested in the oil wells being exhausted by their operation. This was ordered to be paid to the executrices as income belonging to the widow as the life tenant. In substance, the objectors contend that, since the oil wells are wasting assets and since the testator gave the widow as the life tenant the income from his estate with remainder over, there should be an apportionment of income as between the life tenant and the remaindermen in order that she should not enjoy the entire property and the remainder be rendered practically worthless. The point can and should be decided against the contention upon the ground that the rules for apportionment of income from a wasting asset as between the life tenant and the remainderman have no application here. The rules for the apportionment of income in such cases constitute a vast body of decision law based upon the authority of Howe v. Earl of Dartmouth, 7 Ves. Jr. 137, 32 Eng. Reprint 56, 25 Eng. Rul. Cas. 29. See, Annotation, 77 A. L. R. 753. Howe v. Earl of Dartmouth has been characterized in 4 Bogert, Trusts and Trustees, § 826, as "not illuminating." It is well settled that the rules for the apportionment of income from a wasting asset as between life tenant and remainderman have no application where, as here, the trustee is directed or empowered to retain the testator's investments. Other reasons might be given for this conclusion (see, 33 Am. Jur., Life Estates, Remainders, etc. §§ 346-348); but, since one reason for a decision is enough, we refrain from giving others.

The rule of Howe v. Earl of Dartmouth is one of presumed intention of the testator and, like other rules of construction, is but an aid in ascertaining the testator's intent and yields to manifestation of a contrary intent. A contrary intention is manifested by

directions in the will authorizing the trustee to retain the testator's investments, even where the right of retention is accompanied with a direction to sell if it appears necessary or advisable. In that situation, the life tenant is entitled to the whole income without deductions for depletion. Dexter v. Dexter, 274 Mass. 273, 174 N. E. 493, 77 A. L. R. 750; In re Nicholson [1909] 2 Ch. 111; In re Bates [1907] 1 Ch. 22, 6 B. R. C. 199 (a mining property); Annotation, 77 A. L. R. at pages 774 to 776; 33 Am. Jur., Life Estates, Remainders, etc. §§ 341-347. Consequently, the trial court correctly concluded that the rules for apportioning income between the life tenant and remainderman had no application here. The provisions in the will authorizing and directing the trustee to retain the testator's investments precluded the application of the rule in the instant case. As said by Mr. Justice Kekewich in In re Bates [1907] 1 Ch. 27, 6 B. R. C. 205, *supra:* "The obligation to convert and the power to retain at their discretion are inconsistent the one with the other. If they retain, they exclude the operation of the rule [the rule of Howe v. Earl of Dartmouth]." We do not intimate whether the rule of Howe v. Earl of Dartmouth otherwise applies here.

As the trial court held, the widow's right to take the income free from any reserves for depletion was not adversely affected by the provision in the codicil authorizing the directors of the corporation to create an annual reserve of not to exceed ten percent of the earnings "as a surplus Fund," because this discretionary power was never exercised.

■ After the widow's death the directors of the corporation allowed $2,000 to William J. Roemer and Joseph Koffend, Jr. as additional compensation for services rendered by them as officers of the company from October 19, 1936, to March 31, 1940. The objectors claim that such payments should come out of income. The trial court held that they should not. Such payments were not chargeable against income because the allowance was not *exclusively* for services rendered in connection with the estate, but was for those rendered as officers of the corporation. The corporation

had no right to charge the estate with the salaries of its officers. No authority has been cited by the objectors holding to the contrary.

The widow as executrix paid from her own funds $780.30 as costs of administration, but made no claim therefor in her final account. The right to reimbursement is barred under Minn. St. 1941, §§ 525.47 to 525.49, 525.481 to 525.483 (Mason St. 1940 Supp. §§ 8992-113 to 8992-118); In re Estate of Simon, 187 Minn. 399, 246 N. W. 31; 3 Dunnell, Dig. & Supp. § 3649a. The rights of the parties became fixed by the final decree, which is not subject to impeachment, even by provisions of the will. In re Estate of Mahoney, 195 Minn. 431, 263 N. W. 465. The trial court erred in allowing this amount to the executrices.

Interest was allowed on the amount awarded to the representatives from March 8, 1940, at three percent per annum. The award was upon the value of the use of the money upon a loan basis. Interest is awarded upon equitable principles as compensation to the *cestui* to make him whole. Malcolmson v. Goodhue County Nat. Bank, 200 Minn. 486, 274 N. W. 652. Here, there was an equitable basis for an award of interest. The successor trustee retained the amount due to the representatives after it became due. Presumably it yielded an income during the time it was held by it. By the failure to pay to the representatives the amount due, they were deprived of an opportunity to earn the income during that time. The award of interest is but a substitute for income they might have earned, and thus in a practical way makes them whole.

It is also claimed that the court erred in holding that the expenses of probate or executorial administration were chargeable to corpus and not to income. The will provided that these expenses should be paid "out of cash in bank and life insurance then to be in my estate." There was no life insurance, and the cash in the bank was insufficient in the sum of $13,728.63. Payment of such expenses out of income would be contrary to the testator's intention, because he gave the entire net income to the widow and because he provided for such payment out of corpus—cash in the bank and proceeds of life insurance. His provision for payment

failed in part, for lack of life insurance and insufficiency of cash in bank. But that does not authorize payment to be made out of income. The rule is that ordinarily the expenses of administering the estate prior to the establishment of the trust are chargeable to the corpus of the estate which is ultimately to form the trust and not to income accruing therefrom during administration. Annotation, 135 A. L. R. 1322. Our decision in Held v. Keller, 135 Minn. 192, 160 N. W. 487, is not contra, because there the provisions of the will made the payment of the income subject to the costs and expenses of administration. The case of In re Estate of Bergman, 182 Minn. 128, 233 N. W. 806, is not in point for the reasons that there the will made no provision for the payment of the debts and expenses of administration out of corpus, and payment out of the corpus could not have been made without disturbing the testator's entire plan of distribution, which apparently was to keep certain trust funds intact; while here the will provides for such payments out of corpus, and the executrix had property, constituting corpus, in her hands available for such payment at the time the final decree of distribution was entered, which, although not specifically mentioned therein, constituted a part of the residue of testator's estate and was assigned as a part thereof by the final decree under the rule of Baumann v. Katzenmeyer, 204 Minn. 240, 283 N. W. 242, 120 A. L. R. 627, *supra*.

■ The widow's right to the income from the property transferred is claimed to have been defeated by a practical construction of the will by the corporation and the widow contrary to the rights now asserted. The doctrine of practical construction is applicable to wills the same as to other writings. First and American Nat. Bank v. Higgins, 208 Minn. 295, 293 N. W. 585. Here, there was no express agreement between the parties as to the construction of the writing. The claim of practical construction rests upon inference from the acts of the parties and the surrounding circumstances. Whether the parties adopted a practical construction is a fact question where the evidence permits conflicting inferences to be drawn as to the existence of the fact. Hayday v. Hammermill

Paper Co. 184 Minn. 8, 237 N. W. 600; Camp v. Wilson, 97 Va. 265, 33 S. E. 591; 17 C. J. S., Contracts, § 616. Here, the evidence consists of proof that the corporation declared one dividend of $1,500, that it paid the widow the salary mentioned, and that she did not demand payment of the income from the trust estate. There was no proof why she did not, or that the corporation ever asserted that she was not entitled to it or that she ever admitted such to be the fact. There was no showing of any common understanding as to the meaning of the will or the rights of the parties. Under such circumstances, assuming that the evidence permitted a finding in the affirmative, the finding of fact that there was no practical construction as claimed must be sustained. See, First and American Nat. Bank v. Higgins, *supra*.

Our conclusion is that the order should be modified by disallowing the executrices (1) the $10,013.77 gain from the sale and exchange of the properties of Koffend Petroleum Company, and (2) the $780.30 costs paid by the executrix during administration. Otherwise, it should be in all things affirmed.

Modified in accordance with opinion.

UPON APPLICATION FOR REARGUMENT.

On September 21, 1944, the following opinion was filed:

PETERSON, JUSTICE.

On petition for reargument, appellants urge that the rule requiring apportionment of dividends as between corpus and income, discussed in part 5 of the original opinion, should be limited to stock dividends and extraordinary cash dividends. The authorities cited by us involved cases of such dividends. It was our intention so to limit the rule without intimating whether the rule for apportioning dividends between corpus and income ever applies to ordinary dividends, and we now do so.

A stipulation of the parties shows that the dividend in question was an ordinary cash dividend, which the parties now agree should go to the remaindermen. It therefore follows that respondents' recovery should be further reduced by the sum of $5,023.22 and

that their recovery should be the sum of $33,922.04 together with interest thereon at three percent from March 8, 1940.

Modified on petition for reargument as stated.